O

# United States District Court
# Central District of California

| | |
|---|---|
| ALICE LEE and DAVID W. MARTIN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GLOBAL TEL*LINK CORPORATION,<br><br>Defendant. | Case No. 2:15-cv-02495-ODW(PLAx)<br><br>**ORDER GRANTING MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT [135] AND DENYING AS MOOT APPLICATION TO FILE DOCUMENT UNDER SEAL, MOTION FOR SUMMARY JUDGMENT, MOTION TO EXCLUDE, APPLICATION TO FILE UNDER SEAL, AND MOTION TO CERTIFY CLASS [120, 111, 98, 87, 72]** |

## I.  INTRODUCTION

This case is about automated collect call messages that occur when inmates in jails and prisons attempt to call a number and have the recipient of the call pay the charges. (*See* First Consolidated Class Action Complaint ("FCCAC") ¶¶ 11–18.) Plaintiff alleges that the automated nature of the calls to cell phone numbers violates the Telephone Consumer Protection Act ("TCPA"). (*Id.* ¶¶ 47–53.) While Defendant Global Tel*Link Corporation ("GTL") maintains that it would prevail on the merits if the case were to be tried, the parties have reached a settlement to avoid risk for both sides. (*See* Mot. 1–2, ECF No. 135.) Plaintiff has moved for preliminary approval of

the settlement agreement, provisional class certification, and approval of the form of class notice, which GTL has not opposed. For the reasons discussed below, the Court provisionally **GRANTS** the motion for class certification and preliminarily **APPROVES** the class settlement.

## II. BACKGROUND

The basics of the putative class and the proposed settlement are outlined below.

### A. Factual Background

GTL provides collect-call services to inmates at jails and prisons throughout the United States. (*See* FCCAC ¶ 11.) The service requires that the called party establish a billing relationship with GTL in order to pay for and receive calls from an inmate. (*Id.* ¶ 13.) When an inmate attempts to place a collect call to a telephone number for which there is no pre-established billing relationship with GTL, the call attempt will trigger a separate prerecorded "Notification Call" that tells the called party that they need to set up an account in order to pay for and receive the call. (*Id.* ¶ 14.)

Plaintiff[1] purports to represent a class of persons who have received such calls on their cellular telephone, with each call allegedly representing a violation of the TCPA's prohibition against automated calls to cell phones without prior express permission from the called party. (*Id.* ¶ 35); *see* 47 U.S.C. § 227(b)(1)(iii). GTL contends that its Notification Calls are exempt from the TCPA due to an order from the Federal Communications Commission. (Mot. 3.) In response, Plaintiff argues that the calls are not exempt because GTL does not provide an opt-out mechanism in compliance with the FCC's order. (*Id.*) The parties now state that they have entered into a settlement due to the fact that the litigation is highly contentious and there is risk to both sides in not settling. (*Id.* at 1–2.)

Plaintiffs filed the putative class action Complaint on December 5, 2014, and it was assigned to this Court on April 3, 2015. (*See* ECF No. 12.) Plaintiff's FCCAC asserts only one claim: violations of the TCPA. (FCCAC ¶¶ 47–53.)

---

[1] The relevant lead Plaintiff in this action is David M. Martin. (*See* Mot. 3.)

**B.      Settlement Terms**

The parties propose no sub-classes; the class will be uniform. (*See* Mot. 4–5.)

### 1.      Relevant Definitions

Plaintiffs define the proposed class as follows: "All persons using and/or subscribing to a mobile telephone number to which a Notification Call was placed during the Class Period." (*Id.* at 4.) The Judge and court staff working on this case are excluded from the class definition, as are their immediate family members. (*Id.*) The parties estimate that there are 1,800,000 members in the proposed class. (*Id.* at 5.)

The definition of the Class Period is December 5, 2010, through the date of entry of a Preliminary Approval Order. (*Id.* at 4.)

A Notification Call is defined as "a call (i) placed by or on behalf of GTL, (ii) to a number attempted in a Failed Inmate Call Attempt, (iii) using a prerecorded voice message, (iv) to explain in sum and substance that inmate calls could not be completed and/or billed, and that the called party could take certain steps to arrange for billing and/or set up a prepaid account." (*Id.*)

A Failed Inmate Call Attempt is a telephone call attempted by an inmate or prisoner through GTL's service to a phone number for which GTL had no billing relationship and therefore no means to bill the call to the called party. (*Id.*)

### 2.      Settlement Fund and GTL's Changing Practices

GTL will pay $8,800,000 into a common settlement fund. (*Id.* at 5.) Class members who submit a claim will receive a pro-rata share of the balance of that amount—after payment of notice and administration costs, any Court-ordered award of attorneys' fees and expenses, and any Court-ordered incentive award for Plaintiff. (*Id.*) Because the amount that class members will receive depends on the number of claims submitted, the parties cannot estimate with specificity the amount that members who submit claims are likely to receive. (*Id.*) However, they conservatively estimate that if the percentage of potential class members who submit claims is in

1 | keeping with typical TCPA cases (roughly 5%), then each class member will receive
2 | about $60.  (*Id.* at 12.)

3 |       In addition to the payment to class members who submit claims, GTL will
4 | change its practices to include in all Notification Calls an interactive-voice and/or key-
5 | activated opt-out mechanism that the called party may use to opt-out of all future
6 | Notification Calls.  (*Id.* at 5.)  The called party will also be provided with a toll-free
7 | number that can be used to opt-out.  (*Id.*)  Finally, opting out is effective to block all
8 | future calls, regardless of the number of times an inmate attempts to call that number.
9 | (*Id.*)

10 |       The settlement amount shall be reserved and paid out as follows*:*

12 | (1) <u>Opting In and Opting Out</u>: After Notice is initially sent (*see* Section on
13 | Notice, below), class members will have 60 days in which to submit timely
14 | and valid requests for exclusion.  (*Id.* at 8.)  Requests for exclusion must be
15 | mailed to the settlement administrator.  (*Id.*)  Similarly, objections to the
16 | settlement must be made within 60 days.  (*Id.*)  Objections must be filed
17 | with the Court.  (*Id.*)  The parties have agreed that in order to ensure that
18 | only valid class members can object to the settlement, objectors must
19 | provide a valid claim ID, demonstrate ownership of a telephone number that
20 | appears on the class list based on GTL's records, or produce telephone
21 | records establishing receipt of a Notification Call.  (*Id.*)

23 | (2) <u>Release of Claims</u>: Any class member who does not opt out within the 60-
24 | day period described above will release all claims against GTL arising out of
25 | Notification Calls, calls made by automatic telephone dialing systems,
26 | and/or artificial or prerecorded voice calls to mobile telephones during the
27 | class period.  (*Id.*)

(3) <u>Calculation of Payment</u>: Once the claims period has ended, the settlement administrator will calculate the amount each class member is to receive (the amount will be uniform among all class members, aside from any incentive award to the named plaintiff). (*See id.*)

(4) <u>Method of Payment</u>: The settlement administrator will send checks to the class members who submit valid claims. (*See id.* at 5–6.) The recipients will then have 120 days to cash the check. (*Id.* at 5.) Any amounts that remain uncashed after 120 days will be part of a second distribution, whereby any remaining funds will be distributed to class members who did cash their checks, provided that each member would receive at least $10 in the second distribution. (*Id.*) After 120 days of the date of the checks in the second distribution, any remaining funds will be paid to the National Consumer Law Center, which works with the FCC to enforce the protections of the TCPA. (*Id.* at 5–6.) No funds will revert to GTL. (*Id.*)

(5) <u>Attorneys' Fees and Incentive Award</u>: Class counsel has indicated that they will file a motion for attorneys' fees and for an incentive award for the named plaintiff. (*Id.* at 8–9.) Further, the parties have not agreed that GTL is stipulating to a certain amount of fees or awards; GTL is permitted to oppose the requested awards. (*Id.*) Moreover, the parties have agreed that the settlement is not contingent upon any such awards being granted. (*Id.*)

(6) <u>Costs to be Deducted from the Settlement Amount</u>: Deducted from the settlement fund will be: costs of notice and administration of settlement; any Court-ordered award of attorneys' fees and expenses; and any Court-ordered incentive award for Plaintiff. (*Id.* at 5.)

(7) <u>Blow-Up Clause</u>: The parties have not identified any particular number of claims or opt-outs that would void the settlement. (*See generally id.*)

## C. Class Notice

Notice will be given to class members as follows, within 120 days after the Court grants the Motion for Preliminary Approval. (*Id.* at 19.)

(1) GTL already produced records of its Notification Calls during the discovery process, and it further refined those records to compile a settlement class list containing the unique telephone numbers of each person that appears to be in the class, based on the records. (*Id.* at 6–7.)

(2) Next, the parties will subpoena wireless cell phone providers (including Verizon, AT&T, T-Mobile, Cricket Wireless, US Cellular, and others) to obtain the email addresses and mailing addresses associated with those phone numbers. (*Id.*)

(3) The settlement administrator will then either mail or email written notice to persons whose telephone numbers appear on the settlement class list. The administrator will also send out a second reminder email before the claims period ends. (*Id.*)

There will also be a website dedicated to the settlement, with a long-form notice available. (*Id.* at 7.) The website will provide for online submission of the Claim Forms and will allow settlement class members to update their contact information. (*Id.*) A toll-free number will also be provided in order for potential class members to obtain more information. (*Id.*) Finally, the settlement administrators will carry out internet publication through the use of Facebook Newsfeed. (*Id.*)

### III. CLASS CERTIFICATION

In order to grant preliminary approval of the class-wide settlement, the Court must certify the class for purposes of settlement.

**A. Legal Standard**

Class certification is appropriate only if "each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)" are met. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Under Rule 23(a), the plaintiff must show that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These requirements are generally referred to as numerosity, commonality, typicality, and adequacy. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012).

Next, the proposed class must meet the requirements of at least one of the three types of class actions listed in Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011). Those three types are class actions where: (1) individual class members' actions would create a risk of inconsistent adjudications or adjudications that would unfairly bind other class members; (2) the defendant's actions have made final injunctive relief appropriate for the class as a whole; and/or (3) questions of law or fact predominate over questions affecting only individual class members, and a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b).

Where class certification is sought for settlement purposes only, the certification inquiry still "demand[s] undiluted, even heightened, attention." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

**B. Discussion**

For the reasons discussed below, the Court finds that all of the requirements for

7

class certification are met.

### 1. Rule 23(a)

The putative class satisfies the requirements of numerosity, commonality, typicality, and adequacy.

#### i. Numerosity

While no "exact numerical cut-off is required" for the numerosity requirement, "numerosity is presumed where the plaintiff class contains forty or more members." *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009). The estimated class size in this case is almost 2 million members. (*See* Mot. 5.) Thus, this class quite easily meets the requirement.

#### ii. Commonality

Next, the claims of potential class members demonstrate common questions of fact and law. All that is required under this element is a "single significant question of law or fact." *Mazza*, 666 F.3d at 589. Here, the issues are essentially the same for all members: they all received a Notification Call on their cellular telephones and were unable to opt out, allegedly in violation of the TCPA. (*See* FCCAC ¶ 35.) Common questions among the class include: (1) whether the calls used a "prerecorded voice," and (2) whether the calls complied with the FCC's opt-out requirements. (*See generally id.*) At this juncture, there are no discernable individualized issues that might detract from the common questions of fact and law. As such, the class meets this requirement.

#### iii. Typicality

The named plaintiff in this action also meets the typicality requirement. Typicality in this context means that the representative claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, Plaintiff Martin (like all class members) contends that he received a robocall, that it was made without prior express consent, and that it was not exempt per the FCC's order. (*See* FCCAC ¶¶ 19–27.) This

8

demonstrates that the lead plaintiff shares common material factual and legal issues with the other settlement class members.

### iv. Adequacy

Finally, the named plaintiff and his counsel appear to satisfy the adequacy requirement for representing absent class members. This requirement is met where the named plaintiffs and their counsel do not have conflicts of interest with other class members and will vigorously prosecute the interests of the class. *Hanlon*, 150 F.3d at 1020. Here, there is no evidence of any potential conflicts. The class counsel appear generally well qualified in that they have successfully litigated TCPA actions in the past, and they seem to have diligently represented named plaintiff and the class through the discovery and motion practice that has occurred in this case thus far. (Sostrin Decl. ¶¶ 15–21, ECF No. 135-1; Lester Decl. ¶¶ 8–14, ECF No. 135-4.) As such, the proposed class and its representatives satisfy the Rule 23(a) requirements.

### 2. Rule 23(b)(3)

This action is maintainable under Rule 23(b)(3), which has two requirements: (1) that questions of law or fact common to class members predominate over any questions affecting only individual class members, and (2) that resolution of the issues in this case on a class-wide basis are superior to any other available methods of adjudication. Questions of law or fact common to class members in this case predominate over individualized questions because the only issues that appear to be at stake—whether the calls were prerecorded and whether the FCC exempts them from the TCPA—are common to the class. (*See* FCCAC ¶¶ 47–53.) Further, a class action appears to be a far superior method of adjudicating the class members' claims. The sheer number of class members demonstrates that individual actions would not be efficient, and if each potential class member were to go it alone, the costs of litigation for each plaintiff would dwarf any recovery.

Thus, the class may be certified for settlement purposes under Rule 23(b)(3).

### IV. PRELIMINARY APPROVAL OF CLASS SETTLEMENT

Next, the Court must assess the proposed settlement itself to determine whether it is fair to all parties. Fed. R. Civ. P. 23(e).

## A. Legal Standard

"The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." *Id.* "Approval of a class action settlement requires a two-step process—a preliminary approval followed by a later final approval." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016). "At the preliminary approval stage, the court 'evaluates the terms of the settlement to determine whether they are within a range of possible judicial approval.'" *Id.* (quoting *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 472 (E.D. Cal. 2009)). Thus, "the court may grant preliminary approval of a settlement and direct notice to the class if the settlement: '(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval.'" *Id.* (quoting *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011)).

## B. Discussion

The Court determines that the settlement negotiations appear fair and adequate and observes that the proposed settlement has no obvious deficiencies.

### 1. Adequacy of Negotiations

The Court is satisfied that the settlement here was the product of "serious, informed, non-collusive negotiations." *See Spann*, 314 F.R.D. at 319. Several factors support Plaintiff's contention that the settlement is fair: Plaintiff has declared that the settlement was reached through arm's length negotiations (Mot. 2); significant discovery has occurred (*Id.* at 1); counsel has resolved TCPA actions before (*see* Sostrin Decl. ¶¶ 15–21); GTL will be allowed to contest any award of attorneys' fees or an incentive award (Mot. 8–9); and the settlement agreement is not contingent on

an award of those fees (*Id.*). In other words, no markers of collusion appear present.

### 2. Settlement Terms

After reviewing the terms of the settlement, the Court determines that there are no obvious deficiencies, the settlement does not unfairly give preferential treatment to named plaintiffs, and it falls within the range of possible approval.

> Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026. "Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525–26 (C.D. Cal. 2004) (internal citations and quotation marks omitted). Thus, "[t]he initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Id.*

Here, as with most class actions, there was risk to both parties in allowing this case to go to trial. As expressed in the motion for approval of the settlement, "both Plaintiffs and Defendants strongly believe in the merits of their respective positions, but they are also acutely aware of the uncertainties and risks associated with complex class association litigation generally and this case in particular." (Mot. 14.) It is from this perspective that the Court now considers the fairness of the terms of the settlement.

### 3. Settlement Funds

The Court notes no obvious deficiencies in the amount and allocations of settlement funds.

In the Ninth Circuit, there is no per se rule against incentive awards for class representatives. However, "district courts [should] scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). In addition, "[w]hile attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).

Here, however, the parties have not agreed to an amount for either attorneys' fees or any incentive award. (Mot. 8–9.) Nor have they made the settlement of the action contingent on either type of award. (*Id.*) As such, the Court sees no issue with approving settlement on this basis; the Court will assess requests for any such awards when they are filed.

### 4. Release of Claims

"Beyond the value of the settlement, potential recovery at trial, and inherent risks in continued litigation, courts also consider whether a class action settlement contains an overly broad release of liability." *Spann*, 314 F.R.D. at 327. Here, class members and individuals who fail to opt out will release only the claims "aris[ing] out of the Notification Calls, calls made by automatic telephone dialing systems, and/or artificial or prerecorded voice calls to mobile telephones." (Mot. 8.) The Court is satisfied that the released claims concern only the issues at stake in this litigation and therefore concludes that the release "adequately balances fairness to absent class members and recovery for plaintiffs with defendants' business interest in ending this litigation with finality." *See Spann*, 314 F.R.D. at 327–28.

### 5. Notice of Class Settlement

In order to find that notice to absent class members is sufficient, the Court must analyze both the type and content of the notice.

### i. Type of Notice

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

Here, counsel intends to use a consulting company to carry out Notice. (Mot. 6.) It will use the email and mailing address records gleaned obtained through subpoenas to the wireless providers corresponding with the cell phone numbers on GTL's list. (*Id.*) Then written notice will be effected through email and the U.S. Postal Service, and internet publication will be accomplished through Facebook. (*Id.* 6–7.) Because email and mailing addresses will be available through wireless providers, this notice is sufficient and most practicable under the circumstances.

### ii. Content of Notice

Class notice must state "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members." Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii).

The parties have provided a copy of the written Notice as an exhibit. (ECF No. 135-2, beginning at 51). It is comprehensive, covering the basics of the case, the class definition, and what the class action is claiming (violations of the TCPA). (*See id.*) It also explains the procedure for opting out or objecting, the ability to appear at the final approval hearing, and the binding effect on class members who do not opt out (even if they do not submit a claim for payment). (*Id.*) The content of the Notice meets all of the requirements of Rule 23(c)(2)(B)(i)–(vii).

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiffs' motion for provisional certification of the class and preliminary approval of class settlement. Per

the parties' request that the final approval hearing be held no sooner than 238 days after the date of this Order (Mot. 18), the hearing shall be held on **December 4, 2017 at 1:30 p.m.** at the United States Courthouse, 350 West First Street, Courtroom 5D, Los Angeles, CA 90012. Based on the parties' settlement and the Court's preliminary approval thereof, the Court hereby **DENIES AS MOOT** the following pending motions: GTL's Application to File Document Under Seal (ECF No. 120); GTL's Motion for Summary Judgment (ECF No. 111); Plaintiff's Motion to Exclude (ECF No. 98); GTL's Application to File Document Under Seal (ECF No. 87); and Plaintiff's original Motion to Certify the Class (ECF No. 72).

**IT IS SO ORDERED.**

April 7, 2017

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**