O

# United States District Court
# Central District of California

| | |
|---|---|
| ALICE LEE and DAVID W. MARTIN, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>    v.<br><br>GLOBAL TEL*LINK CORPORATION,<br><br>            Defendant. | Case No. 2:15-cv-02495-ODW(PLAx)<br><br>**ORDER GRANTING, IN PART, PLAINTIFFS' MOTION FOR REVIEW OF MAGISTRATE JUDGE'S RULING AND OBJECTIONS TO MAGISTRATE JUDGE'S RULING [175]** |

## I.   INTRODUCTION & PROCEDURAL BACKGROUND

Plaintiffs premise this putative class action on Global Tel*Link Corporation's ("GTL") alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

On April 7, 2017, the Court preliminarily approved a class-action settlement, and detailed the parties' agreement to provide notice to the absent class members, among other provisions. (Preliminary Approval Order, ECF No. 141.) As a condition to the preliminary approval, Plaintiffs subpoenaed third-party mobile telephone companies, including TracFone Wireless, U.S. Cellular, Sprint, Boost Mobile, Virgin Mobile, New Cingular d/b/a/ AT&T, Cricket, Cellco Partnership d/b/a Verizon, T-Mobile, and Metro PCS (collectively, "Subpoenaed Companies"). (Mot. for Review 1, ECF No. 175.) The subpoenas sought contact information for subscribers who fell

within Plaintiffs' proposed class definition in order to provide them with direct notice of this action and settlement. (*Id.*)

Two of the Subpoenaed Companies, T-Mobile and MetroPCS (collectively, "Refusing Companies"), refuse to provide customer contact information for subscribers in California, Pennsylvania, and Delaware, because they claim consumer privacy statutes enacted in each of those states preclude disclosure absent subscriber consent.[1] (*Id.* at 2–4.) Plaintiffs moved to compel the production of the withheld contact information for subscribers in those states, and the Refusing Companies opposed. (*See* Joint Stip., ECF No. 144.) The Magistrate Judge held that: 1) the consumer protection statutes precluded production of the customers' contact information without consent; 2) the state statutes are substantive, and thus are not considered a "privilege" for purposes of applying the federal common law of privilege pursuant to Federal Rule of Evidence 501; and 3) Federal Rules of Civil Procedure 23 and 45 do not preempt the state statutes because a party could comply with both the federal and state laws. (*See generally* Magistrate Judge Order ("MJO"), ECF No. 168.)

On September 18, 2017, Plaintiffs moved for review of the Magistrate Judge's Order. (Mot., ECF No. 175.) The Refusing Companies oppose the Motion. (Opp'n, ECF No. 178.) New Cingular Wireless PCS, LLC and Cricket Wireless, LLC, filed a Qualified Non-Opposition to Plaintiffs' Motion, and highlighted the conflicting interpretations of the state laws across different courts. (Non-Opp'n, ECF No. 177.) The Magistrate Judge's Order also addressed whether the Subpoenaed Companies should be required to sift through a list of subscribers that contains subscriber information for all carriers, not just the one subject to the subpoena. (MJO 4–7.)

---

[1] TracFone Wireless produced all subscriber information in response to the subpoena. (Decl. of Sostrin ¶ 5, ECF No. 175-2.) U.S. Cellular, Sprint, Boost Mobile, Virgin Mobile, New Cingular, Cricket, and Cellco Partnership refused to produce subscriber information for subscribers in California, Pennsylvania, and Delaware, but agreed to produce it subject to a court order. (*See id.*) Some of the companies stipulated to entry of such an order.

However, Plaintiffs do not raise this issue in their Motion, and thus the Court does not address it.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 72(a) states:
> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision . . . The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

This rule accords with the federal statute governing the duties and powers of magistrate judges. *See* 28 U.S.C. § 636(b)(1)(A). "The clearly erroneous standard applies to the magistrate judge's factual findings while the contrary to law standard applies to the magistrate judge's legal conclusions, which are reviewed de novo." *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 446 (C.D. Cal. 2007). Plaintiffs' Motion for Review focuses on the Magistrate Judge's legal conclusions.

## III. ANALYSIS OF STATE LAWS

The Court must first address whether each of the states' respective statutes precludes the production of subscriber demographic information. As highlighted by the differing interpretations across courts, the Court enters this statutory web knowing all well the quagmire that lies ahead.

### A. California Public Utilities Code

The Magistrate Judge concluded that "California Public Utility Code [("PUC")] § 2891 prevents providers from disclosing customer information pursuant to a subpoena for *non*-law enforcement purposes (as is the case here) without the prior written consent of the customer." (MJO 8.) Section 2891(a)(4) of the PUC provides, in pertinent part:

> (a) No telephone or telegraph corporation shall make available to any other person or corporation, without first obtaining the residential subscriber's consent, in writing, any of the following information:
> ...
> (4) Demographic information about individual residential subscribers, or aggregate information from which individual identities and characteristics have not been removed.

Telephone companies are subject to civil liability from subscribers if they violate this section. Cal. Pub. Util. Code § 2891(e). Plaintiffs contend that section 2894 provides an exception to the rule precluding disclosure of a subscriber's demographic information, where the disclosure is compelled by a court order. Section 2894 provides:

> (a) Notwithstanding subdivision (e) of Section 2891, the disclosure of any information by an interexchange telephone corporation, a local exchange telephone corporation, or a provider of commercial mobile radio service, as defined in Section 216.8, in good faith compliance with the terms of a state or federal court warrant or order or administrative subpoena issued at the request of a law enforcement official or other federal, state, or local governmental agency for law enforcement purposes, is a complete defense against any civil action brought under this chapter or any other law, including, but not limited to, Chapter 1.5 (commencing with Section 630) of Part 1 of Title 15 of the Penal Code, for the wrongful disclosure of that information.

As urged by the Refusing Companies, the Magistrate Judge held that "the phrase 'state or federal court warrant or order' is modified by the term 'at the request of a law enforcement official.'" (MJO 8 (citing *In re Farsheedi*, No. C 09–3888 JF, 2009 WL 4572745, at *2 (N.D. Cal. Dec. 4, 2009).) Accordingly, the Magistrate Judge concluded that, absent a court order entered at the behest of a law enforcement official, the records may not be disclosed without the subscriber's consent.

Courts have analyzed these statutes with mixed results. *Compare McArdle v. AT & T Mobility LLC*, No. C 09–1117 CW (MEJ), 2010 WL 1532334, at *6 (N.D.

4

Cal. Apr. 16, 2010) (holding a court order is sufficient to release records, but not discussing "law enforcement" language), *with In re Farsheedi*, 2009 WL 4572745, at *1 (noting denial of motion to compel by bankruptcy court where no subscriber consent obtained, but not discussing Section 2894). The Magistrate Judge discounted *McArdle* because that court permitted disclosure of subscriber information pursuant to "any court order," but the "*McArdle* court reached this determination without any mention or analysis of the 'law enforcement' language in Section 2894." (MJO 8 n.6.) Instead, the Magistrate Judge cited *In re Farsheedi*, and noted that the "bankruptcy court [in that case] denied [a] motion to compel third party wireless telecommunications provider to produce cellular phone records without subscriber's consent, as none of Section 2891's enumerated exceptions applied." (*Id.* at 8.) While this may be true, the court in *In re Farsheedi* did not even mention Section 2894, let alone the "law enforcement" language, and specifically noted "a substantial ground for differences of opinion, as the law [did] not appear to be settled[,]" when it comes to the effect of these statutes. *See In re Farsheedi*, 2009 WL 4572745, at *2. Accordingly, the Court does not find this distinction determinative.

The Magistrate Judge also noted a short discussion in *Ades v. Omni Hotels Management Corp.*, No. 2:13-cv-02468–CAS (MANx), 2015 WL 13639233, at *1 (C.D. Cal. May 18, 2015), upholding an objection pursuant to Section 2891. (MJO 15.) In *Ades*, the court noted it was more persuaded by *Birchmeier v. Caribbean Cruise Line, Inc.*, No. 1:12–cv–04069 (N.D. Ill. Mar. 20, 2015), and *Tataryn v. Barnett*, No. 08 FL 00527 (Cal. Sup. Ct. June 9, 2014), than by *Kamalu v. Walmart Stores, Inc.*, No. 1:13-cv-00627-SAB, 2013 WL 4403903, at*6 (E.D. Cal. Aug. 15, 2013). Those courts ruled as follows:

- *Birchmeier*, N.D. Ill., No. 1:12–cv–04069, held Section 2891 applicable, and held Section 2894 required a law-enforcement purpose, relying only on the statutory language of Section 2894 and *Tataryn*;
- *Tataryn*, Cal. Sup. Ct., No. 08 FL 00527, discussed the history of Section 2891

and held that the term "residential" applies to mobile telephone users, not just land lines, and thus Section 2891 required the consent of subscribers, but did not discuss Section 2894; and

- *Kamalu*, 2013 WL 4403903,, held Section 2891 did not apply to mobile telephone providers because of the term "residential" in the statute.

The Court is not persuaded by any one of these opinions, and, instead, takes note of the vastly different approaches to this issue taken by various courts. Therefore, the Court conducts its own independent interpretation of the statute.

On review, Plaintiffs contend that the statutory interpretation of PUC Section 2894 should be governed by the rule of last antecedent, as stated by the Supreme Court in *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). There, the Supreme Court described "the grammatical 'rule of the last antecedent,' according to which a limiting clause or phrase…should ordinarily be read as modifying only the noun or phrase that it immediately follows…." Thus, Plaintiffs argue that the phrase, "issued at the request of a law enforcement official," modifies only the preceding phrase, "administrative subpoena." (Mot. for Review 7, ECF No. 175.)

The Refusing Companies argue that the rule of last antecedent is not controlling, and "can assuredly be overcome by other indicia of meaning…." (Opp'n 4, ECF No. 178 (citing *Barnhart*, 540 U.S. at 26).) As secondary indicia of meaning, the Refusing Companies argue that Plaintiffs' interpretation would eviscerate the protections for subscribers set forth in Section 2891(a)(4). (*Id.*) They also argue that California Code of Civil Procedure 1985.3(f) evinces the California legislature's intent to preclude disclosure of subscriber's telephone records absent written consent. (*Id.* at 5.)

### 1. California Code of Civil Procedure § 1985.3(f)

Section 1985.3(f) provides that "[a] subpoena duces tecum for personal records maintained by a telephone corporation which is a public utility…shall not be valid or effective unless it includes a consent to release, signed by the consumer whose records

are requested, as required by Section 2891 of the Public Utilities Code." As noted by one California secondary source, "[w]ith respect to telephone records, § 1985.3 seems to create more problems than it solves." John Sink, California Subpoena Handbook § 9:4 (October 2017) (discussing overlap between, and scope of, section 1985.3(f) and PUC section 2891).

Section 1985.3 applies to subpoenas, which may be signed and issued by any attorney, without consent of the court. Cal. Code Civ. Pro. § 2020.210(b). This necessarily is a different scenario than one where a court orders production of information. A court must take into consideration the privacy interests of the subscriber, while also weighing the interests of the parties to the litigation in obtaining the information, whereas an attorney signing a form subpoena likely only has the interests of his client in mind. Accordingly, Section 1985.3(f) addresses a different scenario, and is not determinative.

*2. Title, Legislative History, & Purpose*

Another secondary indicium of the meaning of the statute not discussed by the parties is the title of Section 2894. *See Brotherhood of R.R. Trainmen v. Baltimore & O.R. Co.*, 331 U.S. 519, 529 (1947) (cautioning that section titles "cannot limit the plain meaning of the text," but noting that "[f]or interpretive purposes, [titles] are of use only when they shed light on some ambiguous word or phrase."). Cricket and New Cingular's Non-Opposition highlights the ambiguity of this statutory framework. (*See* Non-Opp'n, ECF No. 177.) Thus, the Court also considers the title of Section 2894 in analyzing its meaning.

Section 2894 is titled: "Disclosure of information pursuant to court order or subpoena issued by government agency; defense." Using the Refusing Companies' interpretation of Section 2894, the phrase "issued by a government agency" would modify both "subpoena" and "court order." This does not make sense because a "court order" is not "issued by a government agency," except to the extent one could argue that a court is "government agency." However, the title of this section, read

plainly, indicates to the Court that either a court order *or* an administrative subpoena issued by a government agency is sufficient to protect a telephone company from civil liability when disclosing demographic subscriber information. If the drafters considered a court a "government agency," there would be no need to use the distinct word, "court."

The legislative history of Section 2894 may also be instructive. *See, e.g.*, *Babbitt v. Sweet Home Chapter*, 515 U.S. 687, 704–06 (1995). Here, the California Assembly Bill Analysis from the Committee on Utilities and Commerce from April 26, 1993, notes that "[e]xisting law" [p]rovides that the disclosure of any information by a radiotelephone utility, *in good faith with the terms of a court warrant or order* is a complete defense against any civil action for the wrongful disclosure of that information." California Bill Analysis, A.B. 1740 Assem., 4/26/1993 (emphasis added).[2] Similarly, when discussing this section at the hearing of the California Senate Committee on Judiciary, the key issue was framed as: "Should the disclosure of any customer information by a [telephone company] in good faith compliance with a state or federal order or warrant, or administrative subpoena be a complete defense against any civil action…?" California Bill Analysis, A.B. 1740 Sen., 6/15/1993 (caps in original). Again, on the California Senate floor, on June 24, 1993, the purpose of the bill is described as follows: "This defense would be applicable when these corporations have disclosed any customer information in good faith compliance with the terms of a *court issued warrant, order or subpoena.*" California Bill Analysis, A.B. 1740 Sen., 6/24/1993 (emphasis added).[3] None of the legislative history leading up to the passing of this section discussed the "law enforcement" language.

However, later legislative history materials, surrounding Assembly Bill 617,

---

[2] *Available at*, http://www.leginfo.ca.gov/pub/93-94/bill/asm/ab_1701-1750/ab_1740_cfa_930423_153228_asm_comm

[3] *Available at*, http://www.leginfo.ca.gov/pub/93-94/bill/asm/ab_1701-1750/ab_1740_cfa_930504_100847_sen_floor

introduced in 1999 to expand the definition of a telephone company, include references such as: "this bill extended liability protections to wireless telecommunications providers…*when they are acting in good faith with law enforcement and other government agencies*…." California Bill Analysis, A.B. 617 Assem., 6/16/1999 (emphasis added).[4] At best, the legislative history further clouds what the legislature intended in passing this law.

Finally, Section 2894.10 sets forth the California Legislature's findings concerning consumers' privacy rights as it pertains to telephone solicitations. "The Legislature intends that telephone subscribers be provided with information regarding their privacy rights, under state and federal law, with respect to telephone solicitations." Cal. Pub. Util. Code § 2894.10. This purpose highlights the irony of denying the absent class members here the opportunity to be directly notified of this action, which purports to vindicate their rights that have been violated by unwanted, automated calls to their cellular phones. *See, e.g.*, *Spiegel v. Engagetel*, No. 15 C 1809, 2015 WL 8986932, at *3 (N.D. Ill. Dec. 16, 2015) (holding Federal Rule of Civil Procedure 45 preempts Section 2891, and noting the irony of precluding discovery of contact information in a TCPA case). The legislature could not have meant to preclude notification to subscribers under these circumstances. Accordingly, the Court interprets Section 2894 to shield telephone companies from civil liability where they disclose subscriber information in good faith, and subject to a court order. The Refusing Companies' claim that this would eviscerate the protections of the statute is unfounded because the Court must analyze the subscribers' statutorily-prescribed privacy rights in fashioning an appropriate order. Thus, the Court finds that the Magistrate Judge's ruling was contrary to the law.

**B.     Pennsylvania Law**

The Magistrate Judge also found that Pennsylvania law, 18 Pa.C.S.A. § 5742,

---

[4] *Available at*, http://www.leginfo.ca.gov/pub/99-00/bill/asm/ab_0601-0650/ab_617_cfa_19990813_173126_asm_floor.html

9

precluded disclosure of a subscriber's contact information, absent a court order *and* the subscriber's consent. (MJO 9.) Section 5742(c) provides certain relevant exceptions to the prohibition on divulging a subscriber's information, as follows:

> (c) Exceptions for disclosure of records or other information.--A person or entity may divulge a record or other information pertaining to a subscriber to, or customer of, the service if any of the following paragraphs apply:
> (1) A record or other information may be divulged incident to any service or other business operation or to the protection of the rights or property of the provider.
> (2) A record or other information may be divulged to any of the following:
> (i) An investigative or law enforcement official as authorized in section 5743.
> (ii) The subscriber or customer upon request.
> (iii) A third party, upon receipt from the requester of adequate proof of lawful consent from the subscriber to, or customer of, the service to release the information to the third party.
> (iv) A party to a legal proceeding, upon receipt from the party of a court order entered under subsection (c.1). This subparagraph does not apply to an investigative or law enforcement official authorized under section 5743.
> …
> (4) Subject to paragraph (2), a record or other information may be divulged as authorized by Federal law or as authorized by a Federal regulatory agency having oversight over the person or entity.

Subsection (c.1) provides:
> (c.1) Order for release of records.--
> (1) An order to divulge a record or other information pertaining to a subscriber or customer under subsection (c)(2)(iv) must be approved by a court presiding over the proceeding in which a party seeks the record or other information.
> *(2) The order may be issued only after the subscriber or customer received notice from the party seeking the*

10

> *record or other information and was given an opportunity to be heard.*
> *(3) The court may issue a preliminary order directing the provider to furnish the court with the identity of or contact information for the subscriber or customer if the party does not possess this information.*
> (4) An order for disclosure of a record or other information shall be issued only if the party seeking disclosure demonstrates specific and articulable facts to show that there are reasonable grounds to believe that the record or other information sought is relevant and material to the proceeding. In making its determination, the court shall consider the totality of the circumstances, including input of the subscriber or customer, if any, and the likely impact of the provider.

(emphasis added).

Plaintiffs argue that Section 5742(c)(4) permits disclosure because it permits the carrier to provide the information "as authorized by Federal Law…." (Mot. 10.) The Magistrate Judge was not persuaded by this argument because this exception is "subject to paragraph (2)." (MJO 10.) Paragraph (2) only allows disclosure to "a party to a legal proceeding, upon receipt from the party of a court order entered under subsection (c.1)." (*Id.* (citing 18 Pa.C.S.A. § 5742(c)(2).) Subsection (c.1.) explains that the court order "may be issued only after the subscriber or customer received notice from the party seeking the record or other information and was given an opportunity to be heard." (*Id.* (citing 18 Pa.C.S.A. § 5742(c.1)(2).) After noting these subsections, the Magistrate Judge then concluded that, "under Pennsylvania law, disclosure of such information to a party in a legal proceeding is only permitted pursuant to the customer's *consent* and a court order." (*Id.* (emphasis added).)

This conclusion contradicts the plain language of the statute, which only requires that "the subscriber or customer received *notice* from the party seeking the record…and was given an opportunity to be heard." 18 Pa.C.S.A. § 5742(c.1)(2) (emphasis added). Notice is not the same as consent. Subsection 5742(c)(2)(iii), which applies to release of the information to third parties in the absence of a court

11

order, specifically provides for release of the information "upon receipt from the requester of adequate proof of lawful *consent* from the subscriber…[]" Should the Pennsylvania legislature have intended to require subscriber consent in the presence of a court order, it could have included that language in subsection 5742(c)(2)(iv). But it did not. Further, the statute specifically provides for a scenario, like here, where the party seeking the records does not have the contact information for the subscriber, and permits the court to "issue a preliminary order directing the provider to furnish the court with the identity of or contact information for the subscriber or customer…." 18 Pa.C.S.A. § 5742(c.1)(3). The question then becomes whether production of this information is "authorized by Federal Law."[5] *Id.* § 5742(c)(4).

Plaintiffs argue that the Federal Stored Communications Act ("SCA"), 18 U.S.C. § 2702(c)(6), allows for the production of a subscriber's contact information. (Mot. 10.) Section 2702(c)(6) provides that a telephone company "may divulge a record or other information pertaining to a subscriber…to any person other than a governmental entity." *See also Mintz v. Mark Bartelstein & Assocs., Inc.*, 885 F. Supp. 2d 987, 993–94 (C.D. Cal. 2012) (compelling disclosure of subscriber information pursuant to federal subpoena directed at mobile telephone company, pursuant to SCA). Accordingly, federal law permits disclosure of the contact information for subscribers. *Id.*; *see also* 18 U.S.C. § 2702(c)(6).

Under this framework, the Court may issue an order requiring production of the contact information so long as the subscriber is given notice, and an opportunity to be heard. 18 Pa.C.S.A. § 5742(c.1)(2). Where the party seeking the information does not have addresses to provide the subscribers notice, "[t]he court may issue a

---

[5] Plaintiffs also argue that, because Section 5702 specifically defines the term "court" as the Pennsylvania court of common pleas for purposes of Subchapter C, the subchapter at issue, the requirements of Subchapter C do not apply to federal courts. (Mot. for Review 10.) The Magistrate Judge did not address this argument, and it appears that Plaintiffs did not raise it below. The Refusing Companies argue this definition does not control because Section 5702 also provides that the definitions control "unless the context clearly indicates otherwise." (Opp'n 7 n.5.) The Court declines to address this argument in light of its finding that the statute permits disclosure pursuant to certain procedural safeguards.

preliminary order directing the provider to furnish the court with the…contact information for the subscriber….” *Id.* § 5742(c.1)(3). This presents obvious problems in a case like this, where Plaintiffs seek the addresses of numerous absent class members. While the Court has a duty to oversee the settlement and notice procedures in this class action, its role is not that of a third-party settlement administrator. The Court addresses possible solutions to this problem in Section V. below.

## C. Delaware Law

The Magistrate Judge also concluded that Delaware law unequivocally prohibited the disclosure of subscriber contact information "to any person other than an investigative or law-enforcement officer." (MJO 11 (citing Del. Code Ann. tit. 11 § 2423(c).) In part, the Delaware Stored Communications Act provides:

> (c) Definition of 'record or other information.' --
> (1) For the purposes of this subsection, 'record or other information' does not include the contents of communications to which subsections (a) and (b) of this section apply.
> (2) Except as provided in this subdivision, a provider of electronic communications service or remote computing service may not disclose a record or other information pertaining to a subscriber or customer of the service *to any person other than an investigative or law-enforcement officer*.

Del. Code Ann. tit. 11, § 2423 (emphasis added). Plaintiffs argue that, like the California statute, Delaware also provides an exception that allows the release of subscriber information pursuant to a court order. (Mot. 8–9.) Section 2423(e) provides:

> (e) Causes of action. --Nothing in this chapter may be construed as creating a cause of action against any provider of electronic communication service or remote computing service, such service's officers, employees, or agents or other specified persons for providing information, facilities or assistance *in accordance with the terms of a court order,*

13

> *warrant, subpoena or certification under this chapter*.

*Id.* § 2423(e) (emphasis added). The Magistrate Judge did not specifically address this argument.

The Refusing Companies argue that Plaintiffs' interpretation "fails to take into account the statute as a whole[,]" and urge that "[t]he entire statute governs disclosure to *law enforcement*." (Opp'n 8 (emphasis in original).) The Refusing Companies also point to the title of this section, which also specifically references "law-enforcement officers." (*Id.*) The Refusing Companies claim this supports their position because Subsection 2423(e) then must only apply to court orders obtained in connection with law enforcement. (*Id.*)

While not addressed by the parties, the statute at issue is in Title 11, which is labeled, "Crimes and Criminal Procedure." No party explains why this title, let alone Section 2423, would preclude a party from obtaining subscriber information in a civil action that does not implicate any crime or criminal procedure. The only case that the Court could find to address Section 2423 is *State v. Lunsford*, 141 A.3d 270, 283 (N.J. 2016), in a footnote. There, the New Jersey Supreme Court discussed Section 2423 in evaluating whether the state must apply to the court prior to subpoenaing telephone billing records in relation to a criminal case, and thus is not instructive here.

Another section not addressed by the parties, Section 2427 of title 11, is entitled, "Civil Actions." Similar to the California Statute, this section provides a subscriber a cause of action against a provider of an electronic communication service for a "knowing or intentional violation of §§ 2421–2425…." Del. Code Ann. tit. 11, § 2427(a). The statute also lists defenses to such an action, as follows:

> (d) Defenses. --A good faith reliance on any of the following is a complete defense to any civil or criminal action brought under this section or any other law of this state:
> (1) *A court warrant or order*, a grand jury or Attorney General's subpoena, a legislative authorization or a statutory authorization; *or*
> (2) A good faith determination that § 2403 or § 2423 of this title permitted the conduct that is the subject of the

14

action.

*Id.* § 2427(d) (emphasis added). Thus, while Section 2423(e) may apply to orders obtained pursuant to a law-enforcement purpose, as urged by the Refusing Companies, Section 2427(d) applies specifically to "Civil Actions," and makes no reference of "law enforcement." *Id.* § 2427. Further highlighting this distinction is the fact that Subsection 2427(d)(2) specifically provides an *additional* defense where a company had a "good faith reliance on…a good faith determination that…§2423…permitted the conduct that is the subject of the action." *Id.* The legislature would not have included this subsection, which specifically addresses releasing records for a law-enforcement purpose, if there weren't independent grounds for a defense where the information is produced pursuant to a court order, as prescribed by Subsection 2427(d)(1). *See Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (quoting 2A N. Singer, Statutes and Statutory Construction § 46.06, pp. 181–186 (rev. 6th ed. 2000) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant…."). Accordingly, the Court finds that Section 2427(d)(1) permits the Refusing Companies to produce subscriber information, pursuant to a court order, without subjecting themselves to civil liability.[6]

### D. Privilege & Preemption

Because the Magistrate Judge ruled that the state statutes precluded production of the subscriber's contact information absent a law-enforcement purpose, he also analyzed Plaintiffs' arguments that the state statutes do not control because: 1) they are privileges and this federal action is governed by the federal common law of

---

[6] The only Delaware case the Court found interpreting this section, mentioned it in a footnote, and noted that "Delaware also has adopted state legislation modeled on the Federal Wiretap Act and the Federal Stored Communications Act." *In re Info. Mgmt. Servs., Inc.*, 81 A.3d 278, 292 n.14 (Del. Ch. 2013). The court did not apply the statute because the issues before it were governed by Maryland law. *Id.* at 292. While not determinative, as discussed above, the SCA, which Delaware's statutes are modeled after, permits disclosure of subscriber information to individuals and entities for purposes other than law enforcement. *See Mintz,* 885 F. Supp. 2d at 993–94.

privilege, pursuant to Federal Rule of Evidence 501; and 2) Federal Rules of Civil Procedure 23 and 45 preempt the state laws because the Refusing Companies cannot comply with both laws. (MJO 11–19.) Because the Court finds that California and Delaware law permit disclosure of the records pursuant to a Court order, and Pennsylvania law permits disclosure pursuant to a Court Order *and* with notice to the subscriber, the Court declines to address these arguments.

## IV. THE COURT'S BURDEN UNDER RULE 23

The subpoenas at issue stem from the Court's preliminary approval of this class-action settlement under the TCPA. (Preliminary Approval Order.) The Court directed "the parties [to] subpoena wireless cell phone providers…to obtain the email addresses and mailing addresses associated with [telephone numbers of absent class members]." (*Id.* at 6.) The Magistrate Judge, the Refusing Companies, and Plaintiffs all maintain that the Court's burden to ensure adequate notice to absent class members under Rule 23(c)(2)(B) will be met by the third-party settlement administrator maintaining a website, and posting advertisements on Facebook.

Rule 23(c)(2)(B) states that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." "[I]ndividual notice to identifiable class members is not a discretionary consideration to be waived in a particular case. It is, rather, an unambiguous requirement of Rule 23." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).

Here, the Court is presented with a unique problem because the parties have already identified the class members, but they are identified only by their telephone numbers. Taking the second step of subpoenaing the telephone companies to identify the subscribers' physical and email addresses is reasonable and thus required by Rule 23(c)(2). *C.f. Larson v. AT & T Mobility LLC*, 687 F.3d 109, 128 (3d Cir. 2012) (finding, in class action against cell phone service provider, that it was an abuse of discretion not to require defendant to undertake search of its own billing records,

because of "time, cost and effort necessary," in order to identify class members for individual notice). This procedure also constitutes the best practicable method for protecting the absent class members' rights to due process, and to opt out of this class action, should they choose. *See Eisen*, 417 U.S. at 174 (citation omitted) (explaining that "mandatory notice pursuant to subdivision (c)(2)…is designed to fulfill requirements of due process…"). Where an absent class member's address is known, notice by publication is not sufficient. *Id.* (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 318 (1950)) ("[P]ublication notice could not satisfy due process where the names and addresses of the beneficiaries were known."). Accordingly, under these circumstances, publication notice alone would not be satisfactory.

## V. A PRACTICAL SOLUTION

"Rule 23(d) vests the district court, as manager of the class action, with the appropriate authority to enter whatever orders are necessary to the conduct of the action…." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1102 (5th Cir. 1977) (citations omitted). The Court details its interpretation of the law above, and finds that the Magistrate Judge's Order was contrary to the law. Given the legal framework above, the Court **GRANTS** Plaintiffs' Motion for Review, in part.

With respect to subscribers in California and Delaware, the Court **ORDERS** the Subpoenaed Companies to produce the subscriber information, to the extent they have not already. As detailed above, the Pennsylvania statute requires that the subscribers be provided notice, and an opportunity to be heard. 18 Pa.C.S.A. § 5742(c.1). While the Pennsylvania statute also provides that the Court may issue a preliminary order directing production of the contact information to the *court*, this presents practical problems because it places the Court in the place of a third-party settlement administrator.

In light of these concerns, the Court **ORDERS** the parties and the Subpoenaed Companies to meet and confer to discuss possible solutions to the conflict presented

17

by the competing interests of providing adequate notice to absent class members,[7] who, without direct notice, may be unwittingly waiving their rights to individually pursue the claims encompassed by the class action, and the privacy interests of those same individuals as it pertains to releasing their contact information without prior notice, as is required under Pennsylvania law.

One solution, as discussed by Judge Snyder in *Ades v. Omni Hotels Mgmt. Corp.,* No. 2:13-cv-02468–CAS (MANx), 2015 WL 13639233, at *1 (C.D. Cal. May 18, 2015), is to require the Subpoenaed Companies to prepare a notice advising the subscribers in Pennsylvania that their records have been subpoenaed in connection with this lawsuit, and providing them an opportunity to object to the release of their information.

In *Ades*, the court required AT&T and Verizon to prepare such a notice at the plaintiffs' expense, pursuant to PUC Section 2891, which it had determined applied. *Id.* As the case progressed in *Ades*, the defendant suggested that the Section 2891 notice should be sent first, requiring the subscribers to consent, followed by a class-action notice, to be mailed at a later date. *Ades*, No. 2:13-cv-02468–CAS (MANx), ECF No. 142, at 7–8. The court held that this order of operations would prejudice the class, and found that PUC Section 2891 did not "prohibit[] Verizon and AT&T from sending a class notice at plaintiffs' expense…." *Id.* at 7. The court also noted that, in *Birchmeier v. Caribbean Cruise Line, Inc.*, where the court held PUC Section 2891 applied, the court approved a combined class and Section 2891 notice to be mailed by AT&T at the plaintiffs' expense. *Id.*; *see also Birchmeier*, No. 1:12-cv-04069, ECF Nos. 304, 317 (N.D. Ill. filed May 24, 2012) ("The Court hereby directs AT&T to mail the postcard notice previously approved by the Court directly to its California,

---

[7] The Magistrate Judge, the Refusing Companies, and Plaintiffs all maintain that the Court's burden to ensure adequate notice to absent class members under Rule 23(c)(2)(B) will be met by the third-party settlement administrator maintaining a website, and posting advertisements on Facebook. The Court disagrees in light of its finding that obtaining contact information for the class members is reasonable and practicable under these circumstances. *See* Part IV.

Pennsylvania, and Delaware subscribers….").

The *Ades* court declined to decide whether the court could *compel* the telephone companies to send out class notice because that issue was not in front of it. *Ades*, No. 2:13-cv-02468–CAS (MANx), ECF No. 142, at 7 n.3. Instead, it noted that in *Birchmeier*:

> Verizon and AT&T 'agreed—subject to the Court's approval—to a process in which they . . . would be responsible for mailing [Rule 23] notice directly to their respective California Subscribers,' which notice would include language stating that the subscribers' information would not be released to plaintiffs absent their affirmative consent. [citation] Wireless carrier T-Mobile did not agree to such a process, 'and instead suggested that publication notice is the best notice practicable.'

*Id.* (citing *Birchmeier*, No. 1:12-cv-04069, ECF No. 297 ¶¶ 4–5, 8)). Because of the Court's ruling regarding the applicability of the California and Delaware statutes to this action, the only remaining subscribers to address are those in Pennsylvania. The Court is confident that the parties can propose an amicable solution that will provide the Pennsylvania customers the notice they are entitled to under the statute—especially given that all but T-Mobile and MetroPCS have already agreed, in some form, to produce the information pursuant to a court order. The parties shall submit a joint status report to the Court on, or before, **December 22, 2017**, setting forth their proposed solution.

## VI. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiffs' Motion for Review, in part. (ECF No. 175.) The Court **ORDERS**:

1. The Subpoenaed Companies to produce the name, address, and email address of each person subscribing to the telephone numbers attached to Plaintiffs' subpoena, including those subscribers in California and Delaware, to the extent the information has not already been produced. This information shall not be used, or disclosed, for any purpose other

19

than to provide notice to the subscribers of this class action, as set forth in the Court's Preliminary Approval Order (ECF No. 141).

2. The parties must meet and confer regarding a proposed solution in light of Pennsylvania law, as discussed above, and submit a status report to the Court on, or before, **December 22, 2017**.

**IT IS SO ORDERED.**

December 6, 2017

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**