**LESTER & ASSOCIATES**
PATRIC A. LESTER (SBN 220092)
(pl@lesterlaw.com)
5694 Mission Center Road, #385
San Diego, CA 92108
Telephone:  (619) 665-3888 / Fax: (314) 241-5777

**KEOGH LAW, LTD**
TIMOTHY J. SOSTRIN (*admitted pro hac vice*)
(TSostrin@KeoghLaw.com)
55 W. Monroe St., Suite 3390
Chicago, IL 60603
*Attorneys for Plaintiff David Martin*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICE LEE, et al<br><br>                    Plaintiffs,<br><br>v.<br><br>GLOBAL TEL*LINK<br>CORPORATION,<br><br>                    Defendant. | Case No. 2:15-cv-02495-ODW-PLA<br>[consolidated with 2-15-cv-03464-ODW-PLA]<br><br>**NOTICE AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>DATE:            AUGUST 20, 2018<br>TIME:            1:30 PM<br> COURTROOM:   350 W. 1ST ST., ROOM 5D<br>                      LOS ANGELES, CA 90012<br><br>HON. OTIS D. WRIGHT, II<br>ACTION FILED:  DEC. 8, 2014<br>TRIAL:           VACATED |

TO:    Defendant Global Tel*Link Corporation and all members of the certified settlement class.

PLEASE TAKE NOTICE: On August 20, 2018 at 1:30pm, in the courtroom of United States District Judge Otis D. Wright II at 350 W. 1st Street, Los Angeles, CA 90012, Courtroom 5D, Plaintiff will present this motion for final approval of the class action settlement preliminarily approved by the Court on April 7, 2017. (ECF No. 141)

This Motion is filed pursuant to Fed. R. Civ. P. 23, the Court's preliminary approval order (ECF No. 141) and subsequent orders pertaining to this settlement (ECF Nos. 148, 182, & 187), and the parties' settlement agreement (ECF No. 135-2).

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   THE LITIGATION .............................................................................................2

    A.    Litigation on the Merits ..............................................................................2

    B.    The Settlement, Notice, and Administration ..........................................4

        1.    The Settlement Class...........................................................................4

        2.    Settlement Benefits..............................................................................5

        3.    Notice.....................................................................................................6

        4.    The Claims Process .............................................................................6

        5.    Opportunity to Opt Out and Object ................................................7

        6.    Scope of Release ..................................................................................7

        7.    Attorneys' Fees and Litigation Expenses ......................................7

    C.    Post Settlement Litigation Regarding the Notice Plan .........................8

III.  ARGUMENT.......................................................................................................9

    A.    The Settlement satisfies the criteria for final approval. .....................10

        1.    Strength of Plaintiff's Case in Light of Risks of Further
            Litigation............................................................................................10

        2.    The Amount Offered in Settlement ...............................................12

        3.    Extent of Discovery Completed and Stage of Proceedings .........14

        4.    The Experience of Counsel Supports Final Approval..................15

        5.    Presence of a Governmental Participant .......................................15

        6.    Reaction of Settlement Class Members .........................................15

    B.    Settlement Class members received the best notice practicable............17

    C.    The Non-Class Members' Objections to the Settlement have no
        Merit ..........................................................................................................18

    D.    Class Counsel's attorneys' fees request should be approved.................19

        1.    Objector Kron's objection to the Fee Request is without
            Merit.....................................................................................................20

E.    **Plaintiff's request for an incentive award should be granted.**................24

F.    **The Settlement Class should be finally certified.** ....................................25

IV.   **CONCLUSION** ................................................................................................**25**

# TABLE OF AUTHORITIES

**Cases**

*Adamcik v. Credit Control Servs., Inc.*, 832 F. Supp. 2d 744, 754 (W.D. Tex. 2011)......11

*Adams v. AllianceOne Receivables Mgmt., Inc.,* No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) ...............................................13

*Agne v. Papa John's Int'l., Inc.*, 286 F.R.D. 559, 567 (W.D. Wash. 2012)...............11, 16

*Agne v. Papa John's International Inc. et al*, 2:10-cv-01139 (D. Wa.)............................16

*Arthur v. Sallie Mae*, No. C10-198, 2012 U.S. Dist. LEXIS 3313 at *10, *20 (W.D. Wash. Jan. 10, 2012) .......................................................13, 16

*Bayat v. Bank of the West*, 2015 U.S. Dist. LEXIS 50416, *15 (N.D. Cal. 2015)............16

*Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 84 (1st Cir. 2015) ...........................................16

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 480, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980) 16

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ....................9, 10

*Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015)...................................12

*Craft v. City of San Bernardino*, 624 F.Supp.2d 1113, 1122 (C.D. Cal. 2008) ...............23

*Cubbage v. Talbots, Inc.*, No. 09-cv-00911-BHS, Dkt. No. 114 (W.D. Wash. Nov. 5, 2012)...............................................................12

*Dennis v. Kellog Co.*, 697 F.3d 858 (9th Cir. 2012) ........................................................22

*Desai v. ADT Sec. Servs., Inc.*, No. 1:11-cv-01925, Dkt. No. 229 (N.D. Ill. Feb. 14, 2013) .....................................................................13

*Estrada v. iYogi, Inc.*, No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015)...................................................12

*Franklin v. Wells Fargo Bank, N.A.*, No. 14cv2349-MMA (BGS), 2016 WL 402249 (S.D. Cal. Jan. 29, 2016) .........................................12

*Garner v. State Farm Auto Ins.*, No. CV 08 1365 CW, 2010 WL 1687832, *14 (N.D. Cal. April 22, 2010) ...................................................15

*Garret, et al. v. Sharps Compliance, Inc.*, No. 1:10-cv-04030, Dkt. No. 65 (N.D. Ill. Feb. 23, 2012) ................................................................................................ 13

*Gehrich v. Chase Bank U.S.A, N.A.*, 2016 U.S. Dist. LEXIS 26184 (N.D. Ill 2016) ....... 13

*Grant v Capital Mgmt. Servs*, 2014 WL 888665, *2, *8-9 (S.D. Ca. 2014) .................... 14

*Green v. Serv. Master*, 2009 WL 1810769, at *2 (N.D. Ill. June 22, 2009) ................... 11

*Hageman v. AT&T Mobility LLC*, No. CV 13-50-BLG-RWA, 2015 U.S. Dist. LEXIS 25595, at *18 (D. Mont. Feb. 11, 2015) ............................................................. 20, 24

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1988) ........................................ 9

*Hashw v. Dep't Stores Nat'l Bank*, 2016 U.S. Dist LEXIS 61004 (D. Minn. 2016) ........ 13

*Ikuseghan v. Multicare Health Sys.*, 2016 WL 3976569 (W.D. Wash. July 25, 2016) ..... 12

*In re Capital One TCPA Litigation*, 12-cv-10064 (MDL No. 2416) (N.D. Ill. Feb. 12, 2015) .............................................................................................................. 13, 20

*In re Enhanced Recovery Co.*, No. 13-md-2398 (M.D. Fla. July 29, 2014) .................... 14

*In re Equity Funding Corp. of Am. Sec. Litig.*, 603 F.2d 1353, 1360-61 (9th Cir. 1979) . 18

*In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) ............. 20

*In re Mego*, 213 F.3d 457, 463 (9th Cir. 2000) ................................................................ 20

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) .............. 17

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1043 ................................................... 15

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942, 944 (9th Cir. 2015) ........... 9

*In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) ............................ 20

*In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005) .................... 24

*In re Transpacific Passenger Air Transp. Antitrust Litig.*, 2015 U.S. Dist. LEXIS 67904 (N.D. Cal. 2015) ......................................................................................... 22

*Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) ............................................................ 16

*Kmiec v. Powerave Tech.*, No. 12-00222, 2016 WL 5938709 (C.D. Cal. 2016) ............. 22

*Leung v XPO Logistics, Inc.*, 2018 U.S. Dist. LEXIS 89727, *41-43 (N.D. Ill. 2018) ..... 19

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) .......................... 12

*Manouchehri v. Styles for Less, Inc.*, No. 14cv2521 NLS, 2016 U.S. Dist. LEXIS 80038, at *4 (S.D. Cal. June 20, 2016) ................................................................ 12

*Martinez v. Medicredit, Inc.*, 2018 U.S. Dist. LEXIS 81818, *5 (E.D. Mo. 2018) ........... 19

*North Suburban Chiropractic Clinic Ltd. V. Rx Security, Inc.*, 1:13-cv-06897 (N.D. Ill.) .................................................................................................................... 16

*North Suburban Chiropractic Clinic, Ltd v. Zydus Pharmaceuticals (USA) Inc.*, 1:13-cv-03105 (N.D. Ill.) ........................................................................................... 16

*Officers for Justice v. Civil Serv. Comm'n of City and Cnty.*, 688 F.2d 615, 625 (9th Cir. 1982) .......................................................................................................... 12

*Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 543 (W.D. Wash. 2009) .................... 15, 24

*Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 377-78, 1384 (S.D. Fla. 2007) ............... 16

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000) .................................................. 21

*Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1164 (9th Cir. 2013) .................... 24

*Resnick v. Frank*, 779 F.3d 934, 953 (9th Cir. 2015) ........................................ 21, 22

*Romero v. Producers Dairy Foods, Inc.*, 2007 U.S. Dist. LEXIS 86270 .......................... 20

*Shames v. Hertz Corp.*, No. 07 CV-2174, 2012 WL 5392159, at *6 (S.D. Cal. Nov 05, 2012) ....................................................................................................................... 14

*Spillman v. RPM Pizza, LLC*, No. 10-349, 2013 U.S. Dist. LEXIS 72947 (M.D. La. May 23, 2013) ................................................................................................... 13, 16

*Staton v. BoeingCo.*, 327 F.3d 938, 975 (9th Cir. 2003) ...................................... 21

*Steiner v. Am. Broad Co.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) ............................. 24

*Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, Dkt. No. 96 at ¶ 6 (N.D. Cal. Mar. 10, 2014) ..................................................................................................................... 13

*Swift v. Direct Buy, Inc.*, 2013 U.S. Dist. LEXIS 152618, *14 (N.D. Ind. 2013) ........... 17

*Tadepalli v. Uber Techs., Inc.*, No. 15-CV-04348-MEJ, 2016 WL 1622881, at *8 (N.D. Cal. Apr. 25, 2016) ........................................................................................ 15

*Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) ........... 20

*Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wyo. 2011) ........ 11

*Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D. Ill. 2011)......11

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)........................................23, 24

*Washington Public Power Supply Sys. Sec. Litig., 19 F.3d 1291* ....................................21

*Weisberg v. H.D. Supply, Inc.*, 2018 U.S. Dist. LEXIS 14099, *22-23 (C.D. Cal. 2018) 23

*Wood Dale Chiropractic, Ltd. V. DrFirst.com, Inc.*, 1:12-cv-00780, (N.D. Ill) ..............16

*Wright v. Nationstar Mortg. LLC*, 2016 U.S. Dist. LEXIS 115729, *28 (N.D. Ill. 2016) 13

*Zepeda v. PayPal, Inc.*, 2017 U.S. Dist. LEXIS 43672, *56 (N.D. Cal.  2017)...............18

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff David Martin ("Plaintiff") moves the Court for final approval of the class wide settlement agreement ("the Settlement") reached between Plaintiff and defendant Global Tel*Link Corporation ("Defendant" or "GTL"). *See* Exhibit 1.  The Settlement fully resolves the only claim in this action – that GTL's prerecorded "Notification Calls", sent to the recipients of inmate-dialed collect calls,  violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227(b)(1)(A) when placed to cellular telephone numbers.[1]  On April 7, 2017, the Court certified the class for settlement purposes and preliminarily approved the settlement.  (ECF No. 141).

Under the settlement, GTL must pay $8,800,000 into a non-reversionary settlement fund and must change its practices to include a voice and/or key-activated opt-out mechanism in future Notification calls so that recipients may block all future Notification calls to their telephone numbers.  *Id.* at pp. 3-4.  Class members who submit a valid claim will receive a pro-rata share of the settlement fund, after payment of notice and administration costs, any Court-ordered award of attorneys' fees and expenses, and any Court-ordered incentive award for Plaintiff. *Id.*  At the time Plaintiff moved for preliminary approval, Plaintiff estimated that each member of the settlement class who filed a valid claim would receive approximately $60.00 if the Court grants the attorney's fees, expenses, and incentive award request by the Plaintiff. *See* (ECF No. 188).  Based on the number of claims filed, however, the pro rata share of each clamant will be approximately $175.00.  Given the substantial monetary relief to the Class, as well as the significant practice changes that GTL agreed to adopt, the Settlement is more than fair,

---

[1] On June 10, 2015, the Court consolidated the Action with *Lee v. Global Tel*Link Corporation*, Case No. 2:15-cv-02495, ordering that all papers in the Action shall be filed only in the low-number case numbered 2:15-cv-02495-ODW-PLA, and that case number 2:15-cv-03464-ODW-FFM was placed in inactive status. On October 25, 2016, the Court dismissed the *Lee* Action with prejudice as between plaintiff Alice Lee and defendant GTL only, leaving only the *Martin* action remaining. Accordingly, Alice Lee is not a party to the Settlement.

adequate, reasonable, and in the best interests of the Class.

A robust notice plan ensured that the Class received the best notice practicable. Plaintiff subpoenaed telephone service providers across the country to identify the recipients of GTL's notification calls so the Settlement Administrator could mail them direct notice of the settlement. Although this resulted in additional litigation, the telephone service providers ultimately complied. *See, e.g. (*ECF No. 184) (overruling magistrate judge's ruling, in part). As a result, the Settlement Administrator successfully implemented the notice plan, delivering[2] direct notice to all class members that could be identified and reaching millions of consumers through internet publication. See Exhibit 2 - Geraci Decl. 2 at ¶¶ 6-16.

A user-friendly claims process allowed Class members to file claims through a simple claim form, an internet website, or a toll-free phone number. 32,449 timely and valid claims were filed and there were only 19 requests for exclusion. *Id.* at ¶¶ 19-20.

In addition, only two objections were filed, and both were filed by a non-member of the class. The objectors, therefore, lack standing to assert their objections, which are without merit in any case as shown below.

For the reasons set forth in this memorandum and in the papers previously submitted[3] in support of settlement approval, the settlement is fair, adequate, reasonable, and in the best interests of the class. Accordingly, Plaintiff respectfully requests that the Court grant final approval of the settlement by: (1) finding the settlement to be fair, adequate, and reasonable; (2) determining that adequate notice was provided to the class; and (3) finally certifying the Settlement Class.

## II.   THE LITIGATION

### A. Litigation on the Merits

Defendant provides certain collect-call telephone services to inmates at jails and

---

[2] As part of the notice plan, AT&T provided notice to 1,155 Pennsylvania AT&T subscribers as well pursuant to this Court's order. ECF No. 184; *Exhibit 3* - ATT Letter.

[3] Plaintiff has separately moved for attorney fees and costs but addresses the non-class member's objection to such herein.

prisons throughout the country, which require the called party to establish a billing relationship with Defendant in order to pay for and receive calls from an inmate. When an inmate attempts to place a collect call to a telephone number for which there is no pre-established billing relationship, the inmate's call attempt will trigger a separate prerecorded Notification Call from Defendant telling the called party that an inmate is trying to reach them and that an account must be set up to receive and pay for that call.

On December 5, 2014, Plaintiff initiated the Action by filing a complaint alleging that Defendant violates the Telephone Consumer Protection Act ("TCPA") when it places these Notification Calls to cellular telephone numbers because the Notification Calls are automated and prerecorded calls that Defendant places without the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). This Court received this action on June 9, 2015, after this action was transferred from the Southern District of California to the Northern District of California, and then from the Northern District of California to this Court.  The parties have vigorously litigated this action both in discovery and filings with the Court. The parties exchanged extensive written documents, including Defendant's production of voluminous telephone calling data related to its Notification Calls, have proffered expert testimony, and have taken the depositions of both parties, the parties' experts, and a third-party vendor. The parties also engaged in extensive motion practice, including a Motion to Dismiss (ECF No. 40), a Motion to Compel (ECF No. 69), a Motion for Class Certification (ECF No. 72), Motions to Exclude Experts (ECF Nos. 86 and 98), and Summary Judgment (ECF No. 113).

Throughout this litigation, Defendant contended that its Notification Calls are exempt from the TCPA by order of the FCC. S*ee In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 2015 WL 4387780, at ¶¶ 44-46 (July 10, 2015). Plaintiff contends that Defendant's Notification Calls are not exempt because they do not provide an interactive optout mechanism that is compliant with the FCC's order and Defendant disputes that contention. Defendant also claims that its notification calls are exempt from the TCPA

because, as a contractor for state governments, it is not a "person" subject to the TCPA.

Having engaged in ample discovery regarding the class and Defendant's Notification Call practices, and having researched and briefed Defendant's defenses, the parties conducted a mediation before the Honorable Carl J. West (Ret.) of Judicial Arbitration and Mediation Services, Inc. ("JAMS") on October 24, 2016 to attempt to resolve this matter. With the assistance of Judge West, the parties continued to mediate thereafter until this settlement was finalized.

## B. The Settlement, Notice, and Administration

### 1. The Settlement Class

The Agreement settles the claims of the following class of persons:

> "all persons using and/or subscribing to a mobile telephone number to which a Notification Call was placed during the Class Period."

*Agreement* at § 2.33. The "Class Period" is the period from December 5, 2010 through the date of entry of Preliminary Approval Order. *Id.* at § 2.33. A "Notification Call" is "a call (i) placed by or on behalf of GTL, (ii) to a number attempted in a Failed Inmate Call Attempt, (iii) using a prerecorded voice message, (iv) to explain in sum and substance that inmate calls could not be completed and/or billed, and that the called party could take certain steps to arrange for billing and/or setup a prepaid account."[3] *Id.* at § 2.26. A "Failed Inmate Call Attempt" is a telephone call attempted by an inmate or prisoner through GTL's service to a phone number for which GTL had no billing relationship and therefore no means to bill the call to the called party. *Id.* at § 2.18.

Defendant produced records of its Notification Calls during the discovery process, which were examined by Plaintiff's expert. (ECF No. 72-2). Throughout the mediation process, the parties further refined those records to compile a Settlement Class List containing the unique telephone numbers of each person that appears to be in the Settlement Class based on records reasonably available to Defendant. After deduplication by the class administrator, there were one million, seven hundred and ninety-seven, five hundred and seventy-one (1,797,571) unique telephone numbers in the

Settlement Class List. *Exhibit 2 - Geraci Dec.* at ¶ 5.

## 2. Settlement Benefits

Under the Settlement, Defendant has agreed to significant nonmonetary relief that benefits not only the class, but society as a whole.  Defendant will implement the following changes to its Notification Call practices:

> (A) Notification Calls shall include an interactive-voice and/or key-activated opt-out mechanism that the called party may use to opt-out of future Notification Calls.
> (B) Notification Calls shall include a toll-free number that the called party may call to opt out of future Notification Calls;
> (C) When a called party exercises the opt-out from future Notification Calls, the opt-out will be effective to block all future Notification Calls, regardless of how many Failed Inmate Call Attempts occur in the future.

*Agreement.* at § 9.2.

Although a significant benefit, Class Counsel has not sought to monetize or seek fees on any such value.  In addition, Defendant will pay Eight Million, Eight Hundred Thousand ($8,800,000) into a non-reversionary common settlement fund. *Id.* at § 2.38.

Class Members received an opportunity to opt-out of the Class. *See below and Id.* at § 13.1. There were only nineteen requests for exclusion. *Exhibit 2* at ¶ 20.  The remaining class members who filed a valid claim will receive a pro rata share of the common fund after payment of notice and administration costs of $850,000 (*Id.* at ¶ 24), any Court ordered award of fees, expenses, or incentive award for the Plaintiff. *Id.* at §§ 5-6, 9.1, 11.

Plaintiff requested an award of $2,200,000 in attorneys' fees, $76,825.97 in out-of-pocket expenses, and $10,000 service award to Plaintiff. (ECF No. 188)  There are 32,449 valid claims submitted to the Settlement Administrator to date.[4]  Thus, each claimant will receive $174.52 if the Court grants the fees, expenses, and incentive award request by the Plaintiff.

Any portion of the Settlement Fund from uncashed checks will be subject to a

---

[4] There were 1,850 claims identified as deficient. *Exhibit 2* at ¶ 19.  The Class Administrator is sending a deficiency letter to those claimants, who have thirty days from mailing to correct the deficiencies in their claims.  *Id.* Thus, the total number of valid claims could rise to 34,299.

second distribution to persons who cashed their checks, provided that each recipient would receive at least ten dollars. *Settlement.* at § 12.2. After the last check becomes invalid, the Settlement Administrator will pay any remaining funds, subject to this Court's approval, to the Cy Pres Recipient, the National Association of Consumer Advocates, [5] earmarked for its work with the FCC to ensure that consumers' rights are maintained under the TCPA. *Id.* at § 12.3. No funds revert to Defendant. *Id.*

### 3. Notice

The parties agreed to and the court preliminarily approved a notice plan that included written Notice directly emailed or mailed to persons whose telephone numbers appear on the Settlement Class List, a website dedicated to the settlement, a long-form notice available through the website, a toll-free number to call to obtain more information about the Agreement, and internet publication through Facebook Newsfeed. *Id.* at § 10.

After Plaintiff expended considerable effort to obtain the class members' contact information from various telephone service providers (see below), the Settlement Administrator implemented the notice plan:  it delivered the notice to approximately 207,000 email addresses and 1,105,000 physical mailing addresses (*Exhibit 2*  at ¶¶ 6-14); it sent approximately 207,000 reminder emails (*id.* at ¶ 15); it established a case website providing both a long form notice and numerous other documents regarding the case (*Id.* at ¶ 17), which received 118,794 visits; it established a toll-free number, which received 22,104 calls (*id.* at ¶ 18), and it published notice via Facebook newsfeed, delivering over 115,000,000 impressions to Facebook users (*id.* at ¶ 16).  As part of the notice plan, AT&T provided notice to 1,155 Pennsylvania AT&T subscribers as well. [6]

### 4. The Claims Process

Class members had sixty (60) days to submit claims after the date of Notice. *Agreement.* at § 2.6. Settlement Class Members had the opportunity to submit claims either online at the settlement website, via an interactive toll-free number, or by mail. *Id.*

---

[5] Plaintiff addresses an objection to this cy pres recipient below.

[6] For all Pennsylvania subscribers of ATT, ATT itself mailed the notice rather than the administrator KCC in accordance with the Court's order. *See* ECF No. 187; Exhibit 3.

at § 11.2. Settlement Class Members were allowed to submit only one valid claim regardless of the number of accounts they may have or regardless of the number of times they were called by Defendant. *Id.* at § 11.1.

All emailed and mailed notices provided a claim ID for the settlement class member to use in submitting a claim. *Id.* at § 10.2(A); *see also Exhibit 2* at exs. C- J.  To ensure that only persons who received a Notification Call are able to receive a settlement award, a person is not be deemed a Settlement Class Member unless their claim form provides either a valid claim ID, a telephone number on the Settlement Class List, or telephone records establishing receipt of a Notification Call. *Agreement.* at §§ 2.34, 11.2.

There were 32,449 valid claims submitted to the administrator.  *Exhibit 2* at ¶ 19. There were also 1,850 claims filed that were deficient because they lacked a valid claim ID, a telephone number on the Class List, and any telephone records. *Id.*  The Administrator is sending a deficiency letter to those claimants, who have 30 days from mailing to cure their deficient claims.  *Id.*; *Id.* at ex. M.

### 5. Opportunity to Opt Out and Object

The Settlement Class members had the right to opt out of the Settlement Class or to object to the terms of the Settlement within 60 days of the notice date. *Agreement* at § 13.  There were only nineteen request for exclusion received, which is only **.**001% of the 1,797,571 known class members. *Exhibit 2* at ¶ 20.

In addition, there were only two objections filed, from non-class members, (see ECF Nos. 191, 194), which are addressed below.

### 6. Scope of Release

Settlement Class Members will release all claims against Defendant (and certain entities related to Defendant) that arise out of the Notification Calls, calls made by automatic telephone dialing systems, and/or artificial or prerecorded voice calls to mobile telephones. *Id.* at § 17.2. In other words, Settlement Class Members release only those claims that arise from the practices at issue in this lawsuit.

### 7. Attorneys' Fees and Litigation Expenses

Although the Agreement contemplated that Plaintiff and Class Counsel would file a motion for attorney's fees, expenses, and an incentive award to Plaintiff, the Agreement is not contingent in any way on the Court's approval of such awards. *Id.* at § 6.3. Nor did the parties agree to a "clear sailing" provision that would prohibit Defendant from challenging the requested awards.  Further, the Notice advised the class members of the exact amount of attorney's fees and incentive award sought, and the motion for attorneys' fees and incentive award was posted on the Settlement Website prior to the objection and opt-out deadline. *Exhibit 2* at ¶ 17, *id.* at ex. j – p.4.

### C. Post Settlement Litigation Regarding the Notice Plan

The Court's Preliminary Approval Order approved and ordered a notice plan requiring (1) GTL to produce the list of telephone numbers that it called (the "Class List"); (2) Plaintiff to serve various telephone service providers with subpoenas for the production of information sufficient to identify the names, addresses, and email addresses of the persons subscribing to those numbers at the time of the calls; and (3) the settlement administrator to use the contact information obtained via these subpoenas in order to mail and email written notice of the settlement to the settlement class. (ECF No. 141 at p. 6).

On April 21, 2017, pursuant to the Court's Preliminary Approval Order, Plaintiff served subpoenas upon TracFone Wireless, U.S. Cellular, Sprint, Boost Mobile, Virgin Mobile, New Cingular d/b/a AT&T, Cricket Wireless, T-Mobile, and MetroPCS, Cellco Partnership d/b/a Verizon. Given that most of these telephone carriers objected to producing the contact information for subscribers residing in California, Pennsylvania, and Delaware, additional litigation was required to effectuate the notice plan. Plaintiff filed various motions to compel (ECF Nos. 142, 143, 144, 153, 154, 155, & 161) and, on September 6, 2017, Magistrate Judge Abrams entered an order denying the production of contact information for subscribers in those states. (ECF Nos. 168, 170, 171, 173).

On September 18, 2017, Plaintiff filed a motion for review of the Magistrate Judge's order. (ECF No. 175). On December 6, 2017, the Court entered an order granting Plaintiff's motion for review, in part, and ordered the subpoenaed companies to produce

the subpoenaed information even for those subscribers in California and Delaware but held that Pennsylvania law precluded production without additional notice to those subscribers of their right to object to the production of their information. (ECF No. 184). The Court thus ordered Plaintiff and the subpoenaed parties to work out a practical solution to the additional notice requirements for Pennsylvania subscribers. *Id*.

After additional negotiations, Plaintiff and the Subpoenaed parties (except for AT&T and Cricket Wireless) proposed to have the Class Administrator (KCC) append an additional statement to the Class Notice previously approved by the Court advising the Pennsylvania subscribers of their right to object to the disclosure of their contact information. (ECF No. 186). AT&T and Cricket Wireless agreed to themselves send the same notice to their Pennsylvania Subscribers rather than having KCC do so. *Id*. The Court approved this revised notice plan on January 16, 2018 and ordered that notice be sent to the class by April 16, 2018. (ECF No. 187).

## III.   ARGUMENT

The approval process takes place in three stages. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). The Court has granted preliminary approval of the settlement and notice has been sent. (ECF No. 141). Thus, the first two stages are complete. The Court now must determine whether, in light of the information learned during the first two stages, final approval is warranted. *Churchill*, 361 F.3d at 575.

This Court has broad discretion to approve or reject a proposed settlement. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942, 944 (9th Cir. 2015) (noting standard of review is "clear abuse of discretion" and emphasizing appellate court's review is "extremely limited"). When considering a motion for final approval of a class action settlement under Rule 23, a court must determine whether the settlement is "fundamentally fair." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1988). A settlement merits final approval, when "the interests of the class as a whole are better served by the settlement than by further litigation." Manual for Complex Litigation

(Fourth) ("MCL 4th") § 21.61, at 421–22 (2015).

**A. The Settlement satisfies the criteria for final approval.**

In deciding whether to grant final approval to a class action settlement, courts consider several factors, including:  (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of the class members to the proposed settlement. *Churchill*, 361 F.3d at 575.  All of these factors support settlement approval here.

**1.  Strength of Plaintiff's Case in Light of Risks of Further Litigation**

Plaintiff continues to believe he has a strong case but acknowledges that there are potential roadblocks to success on the merits.  To begin, GTL claims that the "the FCC expressly exempted GTL's Notification Calls from the TCPA" in response to GTL's petition. (ECF No. 113 at pp. 1, 6-7).  Although Plaintiff has argued that GTL's non-interactive opt out mechanism did not comply with the FCC's requirements for the exemption, there is a substantial risk that the court might rule that it substantially complies with the FCC's order and therefore is exempt from the TCPA. *Id.*

Similarly, the court could also agree with GTL's contention that GTL itself is exempt from the TCPA for an independent reason - because, as a contractor for state governments, GTL is not a "person" subject to the TCPA's regulations. *See* (ECF No. 113 – *GTL's Motion for Summary Judgment* at pp. 27-30).  Most importantly, the Federal Communications Commission has recently issue a request for public comment on this exact issue, raising the possibility that the FCC would adopt GTL's interpretation of the statute. *See Public Notice,* 2018 FCC LEXIS 1496, *13-14 (May 14, 2018) ("we seek comment on . . . whether contractors acting on behalf of federal, state, and local governments are 'persons' under the TCPA").  Thus, there is a substantial risk that GTL would defeat the class claims on the merits.

Class certification is not automatic in TCPA cases either, and there was therefore a substantial risk that no class would be certified in this case. *Compare, e.g., Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D. Ill. 2011) (refusing to certify TCPA class where the "proposed class includes a substantial number of people who voluntarily gave their telephone numbers to the [defendant]"), and *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wyo. 2011) (declining to certify TCPA class in light of individualized inquiry "into whether each individual gave 'express consent' by providing their wireless number") (internal citations omitted), with *Green v. Serv. Master*, 2009 WL 1810769, at *2 (N.D. Ill. June 22, 2009) ("[T]he question of consent may rightly be understood as a common question and the possibility that some class members may have consented is not sufficient to defeat class certification.") (internal citations omitted), and *Agne v. Papa John's Int'l., Inc.*, 286 F.R.D. 559, 567 (W.D. Wash. 2012) ("speculation that customers may have given their express consent to receive text message advertising is not sufficient to defeat class certification.").

Even when a court certifies a TCPA class, there is a risk that the Court would decertify it. This is not a hypothetical risk as it has recently happened to Class Counsel in *Johnson v. Yahoo! Inc.*, No. 14 CV 2028, 2018 U.S. Dist. LEXIS 23564, at *2 (N.D. Ill. Feb. 13, 2018) where that court decertified a TCPA class after notice was sent to over 360,000 class members where plaintiffs' counsels are responsible for the notice costs.

Finally, Plaintiff risked this Court finding that GTL's conduct was not "willful," in which case Plaintiff would not be entitled to treble damages under the TCPA.  See, e.g., *Adamcik v. Credit Control Servs., Inc.*, 832 F. Supp. 2d 744, 754 (W.D. Tex. 2011) (finding the defendant did not act willfully because no evidence existed that defendant knew and disregarded the plaintiff's revocation of consent or that defendant knew it was violating the TCPA). GTL has asserted that it attempted to comply with the FCC's exemption rule and believed it was acting within the bounds of the law. *See (ECF No. 113 at p. 2)*.  Without a willfulness finding, Plaintiffs would not be entitled to $1,500 per call and, even with a willfulness finding, it would be discretionary to award more than

$500.

Due to such uncertainty, courts caution that a proposed settlement "[is] not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators" because "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (citations omitted).  Indeed, "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice v. Civil Serv. Comm'n of City and Cnty.*, 688 F.2d 615, 625 (9th Cir. 1982). As a result, a substantial risk existed the class would recover nothing.  This factor favors settlement. *See Ikuseghan v. Multicare Health Sys.*, 2016 WL 3976569 (W.D. Wash. July 25, 2016) (risk of litigation favored settlement).

## 2.  The Amount Offered in Settlement

The Settlement requires Defendants to pay $8,800,000 to establish a non-reversionary settlement fund for the benefit of Plaintiff and the settlement class.  Each Class Member who submitted a valid will receive an estimated $174.50.  Such relief is well in line with TCPA settlements in the Ninth Circuit.  See, e.g., *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015) (settlement amount favored final approval, where claims rate resulted in *pro rata* payment of approximately $13.75 per class member); *Manouchehri v. Styles for Less, Inc.*, No. 14cv2521 NLS, 2016 U.S. Dist. LEXIS 80038, at *4 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class members could choose to receive either a $10 cash award or a $15 voucher); *Franklin v. Wells Fargo Bank, N.A.*, No. 14cv2349-MMA (BGS), 2016 WL 402249 (S.D. Cal. Jan. 29, 2016) (approving settlement where class members received approximately $71.16); *Estrada v. iYogi, Inc.*, No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members estimated to receive $40); *Cubbage v. Talbots, Inc.*, No. 09-cv-00911-BHS, Dkt. No. 114 (W.D. Wash. Nov. 5, 2012) (granting final approval of TCPA settlement where class members would receive $40 cash or $80 merchandise

certificate); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, Dkt. No. 96 at ¶ 6 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98 each); *Adams v. AllianceOne Receivables Mgmt., Inc.,* No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40 each); *Desai v. ADT Sec. Servs., Inc.*, No. 1:11-cv-01925, Dkt. No. 229 (N.D. Ill. Feb. 14, 2013) (estimating claimants would receive between $50 and $100); *Garret, et al. v. Sharps Compliance, Inc.*, No. 1:10-cv-04030, Dkt. No. 65 (N.D. Ill. Feb. 23, 2012) (claimants received between $27.42 and $28.51); *Arthur v. Sallie Mae*, No. C10-198, 2012 U.S. Dist. LEXIS 3313 at *10, *20 (W.D. Wash. Jan. 10, 2012) (preliminarily approving $24,150,000 for class of 8,000,000 members), final approval granted at 2012 U.S. Dist. LEXIS 132413 (W.D. Wash Sept. 17, 2012) (approving settlement where class members received approximately $100);

Settlements approved in TCPA actions in other Circuits equally support the amount obtained here, as they frequently approve less than $50.00 per claimant. *See In re Capital One TCPA Litigation*, 12-cv-10064 (MDL No. 2416) (N.D. Ill. Feb. 12, 2015) (granting final approval were each claimant would be awarded $39.66); *Spillman v. RPM Pizza, LLC*, 2013 U.S. Dist. LEXIS 72947 at *2, *9 (M.D. La. May 23, 2013)  (final approve for up to $15 for each claimant); *Wright v. Nationstar Mortg. LLC*, 2016 U.S. Dist. LEXIS 115729, *28 (N.D. Ill. 2016) (finally approving "$45.00 recovery per claimant"); *Hashw v. Dep't Stores Nat'l Bank*, 2016 U.S. Dist. LEXIS 61004 (D. Minn. 2016) (finally approving settlement where "each claimant will receive approximately $33.20."); *Garret, et al. v. Sharps Compliance, Inc.*, No. 1:10-cv-04030, Dkt. No. 65 (N.D. Ill. Feb. 23, 2012) (claimants received between $27.42 and $28.51); *Gehrich v. Chase Bank U.S.A, N.A.*, 2016 U.S. Dist. LEXIS 26184 (N.D. Ill 2016) (final approval where "the actual recovery per claimant is approximately $52.50").

In addition to the monetary relief, Class Counsel also insisted upon substantial prospective relief for Class.  This prospective relief benefits the Class because it requires GTL to give the class members an opportunity to prevent any further Notification Calls from being placed to their numbers via an interactive opt-out mechanism.  The purpose

of the TCPA is to protect the privacy interests of telephone subscribers by placing restrictions on unsolicited, automated telephone calls. See S. Rep. No. 102-178, at 6. The prospective relief obtained here furthers that purpose.  It is important to note that courts have approved TCPA class action settlements even when they offered only injunctive relief, without the cash benefits of this settlement. *See In re Enhanced Recovery Co.*, No. 13-md-2398 (M.D. Fla. July 29, 2014) at ECF No. 123, p. 1 (only injunctive relief for class) and ECF No. 124 (settlement granted final approval); *Grant v Capital Mgmt. Servs*, 2014 WL 888665, *2, *8-9 (S.D. Ca. 2014) (approving class settlement under TCPA providing only injunctive relief).  Thus, this element supports final approval.

### 3.  Extent of Discovery Completed and Stage of Proceedings

Courts consider the extent of discovery completed and the stage of the proceedings in determining whether a class action settlement is fair, adequate and reasonable. *Shames v. Hertz Corp.*, No. 07 CV-2174, 2012 WL 5392159, at *6 (S.D. Cal. Nov 05, 2012).

In this case, the parties actively litigated this case for two years before reaching the Settlement.  During that time, the parties completed the discovery process and discovery closed on October 31, 2016. See ECF No. 54.  This discovery included the review of over a million telephone records relating to the Notification Calls, which was necessary to identify class members and to investigate the merits of Defendant's claimed defenses. (ECF No. 135-1 at ¶ 6).  The parties also proffered expert testimony, and deposed both parties, the parties' experts, and a third-party vendor. *Id.*; (ECF No. 188-1 at ¶ 9).

In addition, the parties engaged in extensive motion practice prior to settlement, including a Motion to Dismiss (ECF No. 40), filing a Motion to Compel Discovery (ECF No. 69), a filing a Motion for Class Certification (ECF No. 72), a Motion to Exclude Expert Testimony (ECF Nos. 98), and a motion for Summary Judgment (ECF No. 114).

The parties did not attend mediation until October 24, 2016. (ECF No. 135-1 at ¶ 9).  By that time, the parties were well aware of the strengths and weaknesses of their respective positions.  *Id.* at ¶¶ 8-10.  But the parties did not reach an agreement at that

mediation either.  It was not until February 15, 2017, and after both sides had accepted a mediator's proposal, that the parties reached an agreement.  *Id.* at ¶¶ 11-12.

### 4.  The Experience of Counsel Supports Final Approval

Where Class Counsel is qualified and well informed, their opinion that a settlement is fair, reasonable, and adequate is entitled to significant weight.  *See Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 543 (W.D. Wash. 2009).  Here, Class Counsel are highly experienced class action litigators. (ECF No. 188-1 at ¶¶ 14-20; ECF No. 188-3 at ¶¶ 17-24).

Class Counsel believe the proposed settlement is fair, reasonable, adequate, and in the best interest of the Class.  (ECF No. 135-*4* at ¶¶ 16-18; ECF No. 15-*1* at ¶¶ 2, 14).  Indeed, counsel believe it is an excellent result for the class.

### 5.  Presence of a Governmental Participant

The Class Administrator notified the U.S. Attorney General, attorneys' general in all states, the District of Columbia, and the five recognized territories.  *Exhibit 2* at ¶¶ 2-4.  Not a single government entity has objected to the settlement or sought to intervene.  This factor weighs in favor of settlement approval.  *See Garner v. State Farm Auto Ins.*, No. CV 08 1365 CW, 2010 WL 1687832, *14 (N.D. Cal. April 22, 2010).

### 6.  Reaction of Settlement Class Members

A positive response to a settlement by the class—as evidenced by a small percentage of opt-outs and objections—supports final approval.  *See Pelletz*, 255 F.R.D. at 543-44; *Tadepalli v. Uber Techs., Inc.*, No. 15-CV-04348-MEJ, 2016 WL 1622881, at *8 (N.D. Cal. Apr. 25, 2016) (quoting *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1043) (observing "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members").

Here there were only nineteen requests for exclusions, which is only .001% of the 1,797,571 known class members, and only two objections[7], which are filed by non-class

---

[7] In a settlement of this magnitude, the Court should expect to receive around 41 objections (extrapolating from the average of 4.7 objectors per $1 million in consumer recovery). *See* Theodore

members. Thus, the class responded positively to the notice.

That the claim rate (1.8%) is lower than the expected 5% (see ECF No. 141 at pp. 3-4) does not detract from the settlement. As the 8th Circuit held in *Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017), a low claim rate "does not suggest unfairness." *Id.*, citing *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 377-78, 1384 (S.D. Fla. 2007) (approving settlement where 118,663 out of approximately 10.3 million class members submitted claims, for a claim rate of approximately 1.2 percent); *see also Bayat v. Bank of the West*, 2015 U.S. Dist. LEXIS 50416, *15 (N.D. Cal. 2015) (granting final approval in TCPA action after noting 1.9% claim rate for monetary relief and a 1.1% claims rate for injunctive relief); *Arthur v. SLM Corp.*, No. C10-0198 JLR (W.D. Wash. Aug. 8, 2012), Docket No. 249 at 2-3 (claims rate of approximately 2%). As the *Keil* court put it:

> "even if 97 percent of the class did not exercise their right to share in the fund, their opportunity to do so was a benefit to them. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 480, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980) ("Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel."). Further, assuming that these class members continue to purchase pet food, they will benefit from the additional injunctive relief that the settlement provides. S*ee Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 84 (1st Cir. 2015) ("The district court did not abuse its discretion in concluding that injunctive relief against continuation of the allegedly false advertising was 'a valuable contribution to this settlement agreement.'")."

*Keil*, 862 F.3d at 697.[8] This factor therefore favors settlement approval especially where, as here the class notice was robust, and the claim process allowed multiple convenient

---

Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529, 1550 (2004)

[8] Other courts are in accord. *See Wood Dale Chiropractic, Ltd. V. DrFirst.com, Inc.*, 1:12-cv-00780, (N.D. Ill) (1.97 % of the class made claims); *North Suburban Chiropractic Clinic, Ltd v. Zydus Pharmaceuticals (USA) Inc.,* 1:13-cv-03105 (N.D. Ill.) (.13% of the class made claims); *North Suburban Chiropractic Clinic Ltd. V. Rx Security, Inc.,* 1:13-cv-06897 (N.D. Ill.) .53% of the class made claims); *Agne v. Papa John's International Inc. et al,* 2:10-cv-01139 (D. Wa.) (1.52% of the class made claims); *Spillman v. RPM Pizza*, 10-cv-0349 (M.D. La.) (.07% of the class made claims).

channels to submit a claim.

**B. Settlement Class members received the best notice practicable.**

As shown above, Plaintiff engaged in extensive efforts to deliver the best notice practicable to the class, including issuing subpoenas for their contact information, moving to compel responses to those subpoenas, and filing objections to the magistrate judge's order on those motions.  As the Court held when it issued the ultimate ruling on the motion,

> "Here, the Court is presented with a unique problem because the parties have already identified the class members, but they are identified only by their telephone numbers. Taking the second step of subpoenaing the telephone companies to identify the subscribers' physical and email addresses is reasonable and thus required by Rule 23(c)(2).  This procedure also constitutes the best practicable method for protecting the absent class members' rights to due process, and to opt out of this class action, should they choose."

(ECF No. 184 at p. 16).

The class notice approved by this Court and implemented by KCC adequately informed Settlement Class members of the nature of the action and these proceedings, the terms of the proposed settlement, the effect of the action and release of these claims, the right to exclude themselves from the action, and their right to object to the proposed settlement, as required for final approval under Federal Rule of Civil Procedure 23. *Exhibit 2* at exs. C-J.   Class Counsel also posted their fee petition on the settlement website prior to the objection deadline (*id.* at ¶ 17), providing Settlement Class members full notice of Class Counsel's fees, costs, and incentive award requests in compliance with *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010).

The notice program successfully reached Settlement Class members. *Id.* at ¶¶ 6-14. The administrator sent Direct Notice to over 1,300,000 addresses (*id.*), which is approximately 73% of the known class members and reached millions of consumers with the publication notice. This is the best notice practicable under the circumstances. *See e.g. Swift v. Direct Buy, Inc.*, 2013 U.S. Dist. LEXIS 152618, *14 (N.D. Ind. 2013) ("it is reasonable to reach between 70-95%" of the class").

### C. The Non-Class Members' Objections to the Settlement have no Merit

There were only two objections to the settlement. (ECF No. 191- *Kron objection*; ECF No. 194 - *Beck Objection*).  Both objections were filed by a person who is not a member of the Settlement Class.  Objector Stephen Kron claims to be a class member who submitted claim number 10268118101.  Yet Stephen Kron is not in the class list and that specific claim ID was filed not by Stephen Kron, but by the actual class member, Westcoast Commercial.  *Exhibit 2* at ¶ 21. Thus, Kron has failed to establish that he is a class member.  Even if one to assume that Mr. Kron is somehow associated with Westcoast Commercial, which he has not claimed, it is undisputed that Westcoast Commercial did not object.  This failure to object by the proper party as required by the Court's preliminary approval order and the Settlement Agreement is fatal given Kron's representation by a professional objector, attorney Caroline Tucker,[9] who should understand the need for the actual class member to object in order to be a valid objection.

Similarly, it appears that Beck is not a class member because the telephone number she submitted on her claim form is not in the class list, the claim ID she submitted is not a valid claim ID, and she has not submitted any telephone records establishing receipt of a Notification Call. *Exhibit 2* at ¶¶ 22-23; *Agreement.* at §§ 2.34, 11.2 (specifically providing that claimants who fail to submit valid claims are not class members).[10]

An objector who is not a class member "lacks standing to object." *In re Equity Funding Corp. of Am. Sec. Litig.*, 603 F.2d 1353, 1360-61 (9th Cir. 1979); *Zepeda v. PayPal, Inc.*, 2017 U.S. Dist. LEXIS 43672, *56 (N.D. Cal.  2017) (same).  Thus, both Kron and Beck lack standing to object here.  Yet, Plaintiff will address their objections.

First, Beck only objects to the use of the National Consumer Law Center ("NCLC") as a cy pres recipient for the uncashed checks in this case, contending that the

---

[9] Mr. Kron is represented by attorney Caroline Tucker, an experienced or "professional" objector to class action settlements.  *See e.g.,* 12-cv-11280, *Bacchi v. Mass. Mutual Life Ins. Co.*, Dkt. 283 (D. Mass.); 11-cv-4153, *Barrera v. Pharmavite, LLC,* Dkt. 429 (C.D. Cal.); 15-cv-1143, *Russell v. Kohl's Department Stores*, Dkt. 117 (C.D. Cal.)

[10] It is possible that objector Beck will cure the deficiency in her claim in response to the deficiency letter sent by the Class Administrator. *Exhibit 2* at ¶ 19.

Human Rights Defense Center ("HRDC") would be a more appropriate recipient of those funds, if any, given its work "advocating in favor of lowering the rates and fees for class made by inmates and their loved ones." (ECF No. 194 at pp. 2-3). As an initial matter, any cy pres is expected to be nominal because the cy pres provision is only triggered for uncashed checks and even then only after a second distribution is made or not feasible.

As to HRDC, Plaintiff does not dispute that the HRDC does important work advocating for lower rates, but this case does not concern the rates that GTL charges for collect calls, and indeed, the settlement does not release GTL from any claims arising from allegations of excessive rates. *Agreement.* at § 17.2. This case, instead, concerns the privacy rights of consumers who do not want to receive unsolicited and prerecorded telephone calls on their cellular telephone numbers. These rights are granted by the TCPA, and the NCLC is at the forefront of ensuring that those rights are maintained in favor of consumers.[11] Thus, given NCLC's work protecting the very rights at issue in this case, it "closely approximates the interests of the class and is an appropriate cy pres recipient." *Martinez v. Medicredit, Inc.*, 2018 U.S. Dist. LEXIS 81818, *5 (E.D. Mo. 2018) (awarding cy pres to NCLC in a TCPA class action settlement over objection by defendant because NCLC was most closely aligned with the class' interest); *Leung v XPO Logistics, Inc.*, 2018 U.S. Dist. LEXIS 89727, *41-43 (N.D. Ill. 2018) ("The Court finds that the selection of NCLC as cy pres recipient is reasonable, and will tend to further the goals of the TCPA").

Kron objects only to class counsel's request for attorneys' fees, addressed below.

**D. Class Counsel's attorneys' fees request should be approved.**

For all the reasons set forth in Plaintiff's Motion for Attorneys' Fees and Costs (ECF No. 188), Class Counsel's requested fees and costs are reasonable. Class Counsel seek only the benchmark 25% of the settlement fund despite the fact that one third (33%) is frequently awarded in the Ninth Circuit. *See, e.g., In re Pacific Enterprises Sec. Litig.*,

---

[11] NCLC's website sets forth its extensive TCPA work. https://www.nclc.org/issues/robocalls-and-telemarketing.html. Further providing any cy pres is earmarked to working to maintain the protections of the TCPA will insure the money is used for the benefit of the class.

47 F.3d 373, 379 (9th Cir. 1995) (affirming fee award equal to 33% of fund); *Romero v. Producers Dairy Foods, Inc.*, 2007 U.S. Dist. LEXIS 86270 ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery") (citing 4 Newberg, NEWBERG ON CLASS ACTIONS § 14.6 (4th ed. 2007)); *In re Mego*, 213 F.3d 457, 463 (9th Cir. 2000) (affirming award of 33% of common fund); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (awarding 33% of fund in TCPA class action)); *Hageman v. AT&T Mobility LLC*, No. CV 13-50-BLG-RWA, 2015 U.S. Dist. LEXIS 25595, at *18 (D. Mont. Feb. 11, 2015) (common fund fee assessment for Class Counsel is approved in the amount of 33% or $15 million, from the common fund of $45 million obtained for the Class).

In fact, the court in *In re Capital One Tel. Consumer Prot. Act Litig*, 2015 U.S. Dist. LEXIS 17120, *62 (N.D. Ill. Feb. 12, 2015), analyzed dozens of TCPA class settlements throughout the country and determined that a risk adjusted fee structure would provide a fee of 36% for the first $10 million of the settlement fund.

Class Counsel also reasonably request that they be reimbursed for the $76,825.97, they paid out of pocket to prosecute this action. (ECF No. 188 at p. 12). Class Counsel advanced these costs without any guarantee that they would ever be repaid and costs were necessarily incurred. *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) ("Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement.").

### 1.  Objector Kron's objection to the Fee Request is without Merit

Despite the class notice specifically advising both the percentage and exact amount of attorney fees sought, only one non-class member objects to the fees sought. Objector Kron argues that the percentage calculation for fees should be based not on the total settlement fund, but on the value of the fund after notice and administration costs, and counsels' litigation expenses are deducted. The Ninth Circuit has repeatedly rejected this

argument.   In *Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000), the court held:

> "George argues, the attorneys' fees should be calculated as a percentage of net recovery rather than as a percentage of gross recovery. We disagree.
> . . .
>
> the choice of whether to base an attorneys' fee award on either net or gross recovery should not make a difference so long as the end result is reasonable. Our case law teaches that the reasonableness of attorneys' fees is not measured by the choice of the denominator. *See, e.g., Washington Public Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1294 n.2* ("Because a reasonable fee award is the hallmark of common fund cases, and because arbitrary, and thus unreasonable, fee awards are to be avoided, neither [the lodestar nor the percentage] method should be applied in a formulaic [**26] or mechanical fashion."). If twenty-five percent of gross is reasonable, perhaps thirty-five percent of net would be reasonable.
>
> On remand, the district court may calculate the fee award using the gross settlement amount."

*Id.* at 1258; *see also Staton v. BoeingCo.*, 327 F.3d 938, 975 (9th Cir. 2003) ("The district court also did not abuse its discretion by including the cost of providing notice to the class . . . as part of its putative fund valuation")

The court reached the same conclusion in *Resnick v. Frank*, 779 F.3d 934, 953 (9th Cir. 2015), holding that "[t]he district court did not err in calculating the attorneys' fees award by calculating it as a percentage of the total settlement fund, including notice and administrative costs, and litigation expenses."  In *Resnick*, the Ninth Circuit expressly noted that a fee request based on the total settlement fund is reasonable because:

> "administrative costs in particular make it possible to distribute a settlement award "in a meaningful and significant way.  Similarly, notice costs allow class members to learn about a settlement and litigation expenses make the entire action possible."

*Id.; Staton*, 327 F.3d 938, 975 (9th Cir. 2003) ("The post-settlement cost of providing notice to the class can reasonably be considered a benefit to the class.")

The cases cited by Kron are not persuasive.  The only Ninth Circuit case cited, *Dennis v. Kellog Co.*, 697 F.3d 858 (9th Cir. 2012), actually *supports* the request fee here.  In *Dennis*, the 9th Circuit *included* "notice and administrative costs approximated at $391,500" in its assessment of the value of the settlement to the class. *Id.* at 863.  This defeats Kron's argument that doing so here is improper.  The question in *Dennis* was not whether the inclusion of these costs into the settlement value was proper, but instead whether the inclusion of a claimed cy pres benefit into the settlement value was proper in light of its illusory nature. *Id.* at 868.  This is not an issue here, so *Dennis* is inapposite.

Similarly, *In re Transpacific Passenger Air Transp. Antitrust Litig.*, 2015 U.S. Dist. LEXIS 67904 (N.D. Cal. 2015) also supports the requested fee in this case, and indeed supports an ever greater fee.  The court noted that it was perfectly proper to award fees based on a percentage of the gross fund, but stated that it was that court's "preference" to award based in the net recovery. *Id.* at *14-15.  It then awarded attorneys' fees at <u>thirty percent</u> of the net recovery. *Id.* at *18.  That is more than Plaintiff is seeking here.  If the court were to award 30% of the net recovery in this case, the attorneys' fee award would be 2,361,165 – over one hundred thousand dollars more than what class counsel is actually seeking.  Thus, *In re Transpacific* does not support a *reduction* in the fee sought here, but instead supports a greater fee award.

The only other case from within the Ninth Circuit that Kron cites regarding this gross vs. net issue, *Kmiec v. Powerave Tech.*, No. 12-00222, 2016 WL 5938709 (C.D. Cal. 2016), also fails to support Kron's argument here.  In *Kmiec*, the court <u>did not</u> deduct settlement administration costs from the total value of the settlement fund in its percentage calculation of attorneys' fees; it included those administration fees as part of the total value to the class. *Id.* *8. The *Kmiec* court instead only deducts counsel's *out of pocket expenses* (only $76,825.97 in this case) before awarding 25% of the fund. *Id.*[12]

---

[12] There is no requirement that this court deduct the amount of out of pocket litigation expenses from the value of the settlement fund before applying a percentage to calculate the attorneys' fee. *See Resnick*, 779 F.3d at 953 (*rejecting the argument* that inclusion of litigation expenses would be 'double counting').  Making that deduction would be inappropriate in this case, especially considering that Plaintiff's counsel has not sought to include the value of the prospective relief (interactive opt out

Thus, *Kmiec* supports the notion that notice and administration costs are a value to the class and should be included in the numerator of the percentage calculation here.

At odds with its argument that the court should award deduct administration costs and expenses before calculating a percentage of the fund, Kron also argues (briefly) that the court should instead award class counsel its lodestar with no multiplier.   As held by the courts that Kron cites, the percentage of the fund is the preferred method to award reasonable attorney fees.

The reasonableness of the fee request is borne out by the lodestar cross-check[13].   In this case, Class Counsel's loadstar with the risk multiplier is 3.1.   As the Ninth Circuit stated in *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002), the use of risk multipliers in common fund cases is justified to account for the risk of non-payment that counsel incurred in filing the case on a contingency basis:

> "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases.  This mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases.  In common fund cases, attorneys whose compensation depends on their winning the case must make up in compensation in the cases they win for the lack of compensation in the cases they lose.  Class counsel here have represented that they would not have taken this case other than on a contingency basis. They perform little work on an hourly basis, and the rates they submitted were what they took to be market rates, in other words, rates that did not already reflect an expectation of excellent results.
>
> Thus, a multiplier was appropriate in this case. The district court's percentage of the fund analysis discussed above addressed the substantial

---

mechanisms) into the valuation of the settlement, which would increase the requested fee substantially. In any event, if the court were to deduct litigation expenses in this case, it would only reduce the requested fee from $2,200,000 to $2,180,793.51.  The similarity of these numbers shows that the requested fee is reasonable.

[13] "A lodestar cross-check is not required in this circuit, and in some cases is not a useful reference point." *Weisberg v. H.D. Supply, Inc.*, 2018 U.S. Dist. LEXIS 14099, *22-23 (C.D. Cal. 2018), quoting *Craft v. City of San Bernardino*, 624 F.Supp.2d 1113, 1122 (C.D. Cal. 2008).

risk class counsel faced, compounded by the litigation's duration and complexity. The court considered these circumstances in arriving at a multiplier which was within the range of multipliers applied in common fund cases. We find no abuse of discretion."

*Id.* at 1051. The same reasoning applies here: Class Counsel took this case on a contingency basis and incurred a significant risk of non-payment. (ECF No. 188-1 – *Lester Declaration* at ¶¶ 6-8; ECF No. 188-3 – *Sostrin Declaration* at ¶¶ 8-10; see also ECF No. 188 at pp. 17-18 (explaining risk)). Moreover, the particular multiplier here, 3.1, is in the lower end of the range approved by courts (.6 to 19.6). *See Vizcaino*, 290 F.3d 1043, at 1051 n.6 (collecting cases); *Steiner v. Am. Broad Co.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (approving 6.85 multiplier); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005) (approving multiplier of 6.96). Kron's objection has no merit.

### E. Plaintiff's request for an incentive award should be granted.

Plaintiff's requested incentive award, which are generally approved so long as the awards are reasonable and do not undermine the adequacy of the class representatives, should be approved. *See Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1164 (9th Cir. 2013) (finding incentive award must not "corrupt the settlement by undermining the adequacy of the class representatives and class counsel"). Here, Class Counsel ask the Court to award a service payment to the Class Representative in an amount not to exceed $10,000. The notice specifically advised the class of this request and no objections to this request have been made. Therefore, this award is appropriate for all of the reasons set forth in Plaintiff's motion for the incentive award. (ECF No. *188* at pp. 22-23). It compensates the Class Representative for his time and effort in this case, including his appearances at hearings and deposition. (ECF No. 188-6 at ¶ 3). Plaintiff's requested award is well in line with awards approved by federal courts in this Circuit and elsewhere. *See, e.g., Hageman*, 2015 U.S. Dist. LEXIS 25595, at *18 (incentive award in the amount of $20,000); *Pelletz*, 592 F. Supp. 2d at 1329-30 & n.9 (approving $7,500 incentive awards where named plaintiffs assisted Class Counsel, responded to discovery,

and reviewed settlement terms, and collecting decisions approving awards ranging from $5,000 to $40,000).

   **F.  The Settlement Class should be finally certified.**

   In its Preliminary Approval Order, this Court preliminarily found that the proposed Settlement Class satisfies the requirements of the Federal Rule of Civil Procedure 23. Dkt. No. 141 at pp. 7-9.  For all the reasons set forth in Plaintiff's preliminary approval briefing, the supplemental briefing Plaintiff provided in this brief, and Plaintiff's Motion for Attorneys' Fees, Costs and Service Award, the Court should finally certify the Settlement Class.

**IV.   CONCLUSION**

   Plaintiff respectfully requests the Court grant this motion and enter an Order (1) approving the Settlement Agreement; (2) determining that adequate notice was provided to the Settlement Class; (3) finally certifying the Settlement Class; (4) granting Class Counsel $2,200,000 in attorneys' fees and $76,825.97 in expenses; and (5) approving a service award of $10,000 to Plaintiff.


                                        Respectfully submitted,

                                        LESTER & ASSOCIATES

                                        By:    /s/ Patric A. Lester

                                        KEOGH LAW, LTD

                                        By:    /s/ Timothy J. Sostrin

                                        Attorneys for Plaintiff
                                        DAVID MARTIN