# 𝔘nited 𝔖tates 𝔇istrict 𝔠ourt
# 𝔠entral 𝔇istrict of 𝔠alifornia

| | |
|---|---|
| ALICE LEE, et al., | Case № 2:15-cv-02495-ODW (PLA) |
| Plaintiffs | **ORDER GRANTING FINAL** |
| v. | **APPROVAL [196]; GRANTING, IN** |
| GLOBAL TEL*LINK CORPORATION, | **PART, ATTORNEYS' FEES, COSTS,** |
| Defendants. | **AND SERVICE AWARD [188]; AND** |
| | **DENYING PETITION FOR** |
| | **DISBURSEMENT [197]** |

## I.    INTRODUCTION

This case is about automated collect call messages that occur when inmates at jails and prisons attempt to call a number and have the recipient of the call pay the charges.  Such calls trigger an automated "voice" notice directing the called party to provide billing information.  Plaintiff alleges that the automated nature of the calls to cell phone numbers violates the Telephone Consumer Protection Act ("TCPA").  While Defendant Global Tel*Link Corporation ("GTL") maintains that it would prevail on the merits if the case were to be tried, the parties have reached a settlement to avoid risk for both sides.

On April 7, 2017, the Court granted Plaintiffs' Motion for Class Certification and Preliminary Approval of the Class Settlement.  (Prelim. Order, ECF No. 141.)

The Court found that the proposed settlement was in the best interests of the class, and that the proposed plan for notifying absent class members was the best notice practicable. (*Id.* at 3–6.) It also held that the class met Rule 23's requirements and certified the class for settlement purposes. (*Id.* at 7–9.)

Since then, the parties have been diligently notifying absent class members of the settlement. There was one hiccup in this process. As part of the settlement agreement, the parties agreed that they would obtain contact information for absent class members by subpoenaing subscriber information from cellular telephone providers. However, many of the cell providers objected to the subpoenas pursuant to various state privacy laws. Plaintiffs raised the issue to the Magistrate Judge, who denied Plaintiffs' motion to compel, in part, based on his interpretation of the state laws. (ECF Nos. 168–71, 173.) Plaintiffs moved for review of the Magistrate Judge's ruling. (ECF No. 175.) On December 6, 2017, the Court granted, in part, Plaintiffs' Motion for Review, and ordered the cellular telephone providers to produce subscriber information for class members, subject to certain procedural protections. (ECF No. 184.)

Plaintiffs now move for final approval of the settlement, fee and incentive awards, and final class certification. (ECF Nos. 188, 196.) There are two objectors, both of whom Plaintiffs claim are not members of the class. Irene Beck objects and petitions the Court for a different cy pres disbursement. (ECF Nos. 194, 197.) Stephen Kron claims to be a class member, and objects to the fee award provided to counsel. (ECF No. 191.) These objections are meritless for the reasons discussed below.

As discussed below, the Court **OVERRULES** the objections (ECF Nos. 191, 194); **GRANTS** the Motion for Final Approval of Class Settlement (ECF No. 196); **GRANTS, IN PART**, the Motion for Attorneys' Fees and Costs (ECF No. 188); and **DENIES** the Petition for Disbursement of Funds pursuant to Cy Pres (ECF No. 197).

## II.    FACTUAL BACKGROUND

GTL provides collect-call services to inmates at jails and prisons throughout the United States.  The service requires the called party to establish a billing relationship with GTL to pay for and receive calls from an inmate.  When an inmate attempts to place a collect call to a telephone number for which there is no pre-established billing relationship with GTL, the call attempt will trigger a separate prerecorded "Notification Call" that tells the called party that they need to set up an account to pay for and receive the call.

Plaintiff purports to represent a class of persons who have received such calls on their cellular telephone, with each call allegedly representing a violation of the TCPA's prohibition against automated calls to cell phones without prior express permission from the called party.  *See* 47 U.S.C. § 227(b)(1)(iii).  Defendant contends that its Notification Calls are exempt from the TCPA due to an order from the Federal Communications Commission ("FCC").  In response, Plaintiff argues that the calls are not exempt because GTL does not provide an opt-out mechanism in compliance with the FCC's order.  The parties agree settlement is warranted as the litigation is highly contentious and risk exists for both sides.

Plaintiffs filed the putative class action Complaint on December 5, 2014, and it was assigned to this Court on April 3, 2015.  Plaintiffs assert only one claim— violations of the TCPA.  (Compl., ECF No. 38.)

## III.    SETTLEMENT TERMS

The parties proposed no sub-classes; the class will be uniform.

### A.    Relevant Definitions

The Court preliminarily approved a class of: "All persons using and/or subscribing to a mobile telephone number to which a Notification Call was placed during the Class Period."  (Prelim. Order 3.)  Excluded from this definition are the Judge and court staff on this case, as well as their immediate family members.  The parties do not propose any changes.

The definition of the <u>Class Period</u> is December 5, 2010, through the date of entry of a Preliminary Approval Order, which the Court entered on April 7, 2017. (*Id.*)

A <u>Notification Call</u> is "a call (i) placed by or on behalf of GTL, (ii) to a number attempted in a Failed Inmate Call Attempt, (iii) using a prerecorded voice message, (iv) to explain in sum and substance that inmate calls could not be completed and/or billed, and [v] that the called party could take certain steps to arrange for billing and/or set up a prepaid account." (Settlement Agreement ("SA") 6, ECF No. 135-2.)

A <u>Failed Inmate Call Attempt</u> is a telephone call attempted by an inmate or prisoner through GTL's service to a phone number for which GTL had no billing relationship and therefore no means to bill the call to the called party. (SA 5.)

**B.    Settlement Fund and GTL's Changing Practices**

GTL will pay $8,800,000 into a non-reversionary, common settlement fund. (SA 11.)  Class members who submit a claim will receive a pro-rata share of the balance of that amount—*after* payment of notice and administration costs, any Court-ordered award of attorneys' fees and expenses, and any Court-ordered incentive award for the class representative.

The parties estimated at the preliminary approval stage that each class member who submitted a successful claim would receive approximately $60.  (Prelim. Order 3–4.)  They calculated this amount by assuming a 5% claim rate.  After notice and the claim submission process, there were a total of 32,449 valid claims (and 1,850 deficient claims that may eventually be corrected).  (Declaration of Jay Geraci ("Geraci Decl.") ¶ 19, ECF No. 196-2.)  If no deficient claims are corrected, each class member will receive $174.52, provided that the Court awards the requested fees, costs, incentive award, and administrative expenses.  This per-class-member distribution is more than double what the parties expected.[1]

---

[1] This reflects a relatively low claim rate (1.8%), which the Court addresses below.

In addition to the payment to class members who submit claims, GTL agreed to change its practices to include in all Notification Calls an interactive-voice and/or key-activated opt-out mechanism that the called-party may use to opt-out of all future Notification Calls. The called party will also be provided with a toll-free number that can be used to opt-out. Finally, opting-out is effective to block all future calls, regardless of the number of times an inmate attempts to call that number. (SA 15.)

The settlement amount shall be reserved and paid out as follows:

(1)    <u>Calculation of Payment</u>: Once the claims period ended, the settlement administrator will calculate the amount each class member is to receive (the amount will be uniform among all class members, aside from the named-plaintiff's incentive award). All that remains is to resolve the deficient claim submissions. The settlement administrator identified 1,850 claims as deficient. (Geraci Decl. ¶ 19.) The settlement administrator will send these claimants a deficiency notice, and the claimants will have 30 days to return a valid phone number, claim ID, or provide records establishing receipt of a Notification Call from Defendant. (*Id.*) If none of the deficient claims are remedied, then each claimant is entitled to $174.52, provided the Court awards the fees and costs requested.

(2)    <u>Opting In and Opting Out</u>: After Notice was sent (*see infra* Part C. Notice), class members had 60 days to submit timely and valid requests for exclusion. Requests for exclusion were mailed to the settlement administrator. Nineteen class members requested exclusion from the class. (Geraci Decl. ¶ 20.) Similarly, objections were to be made within 60 days, and filed with the Court. The parties also agreed that, to ensure that only valid class members object to the settlement, objectors must provide a valid claim ID, demonstrate ownership of a telephone number that appears on the class list based on GTL's records, or produce telephone records establishing receipt of a Notification Call. Two individuals objected, as discussed further below. (*See* Geraci Decl. ¶¶ 21–23.)

(3) <u>Release of Claims</u>: Any class member who did not opt out within the 60-day period described above will release all claims against GTL arising out of Notification Calls, calls made by automatic telephone dialing systems, and/or artificial or prerecorded voice calls to mobile telephones.

(4) <u>Method of Payment</u>: The settlement administrator will send checks to the class members who submitted valid claims. The recipients will then have 120 days to cash the check (from the date on the check). Any amounts that remain uncashed after 120 days will be used as part of a second distribution, whereby the settlement administrator will distribute the remaining funds to class members who did cash their checks, provided that each member would receive at least $10 in the second distribution. After 120 days of the date of the checks in the second distribution, any remaining funds will be paid to the National Consumer Law Center, which works with the FCC to enforce the protections of the TCPA. (SA 19–20.) Objector Irene Beck opposes the cy pres distribution to the National Consumer Law Center. (*See* ECF Nos. 194, 197.) The Court addresses Ms. Beck's objection below.

(5) <u>Attorneys' Fees</u>: Plaintiffs' counsel moved for an award of $2,200,000 in attorneys' fees, and $76,825.97 in out-of-pocket expenses to be deducted from the gross settlement amount. (Fee Mot., ECF No. 188.)

(6) <u>Costs to be Deducted from the Settlement Amount</u>: Deducted from the settlement amount will be: costs of notice and administration of settlement; any Court-ordered award of attorneys' fees and expenses; and any Court-ordered incentive award for Plaintiff. The settlement administrator estimates administrative costs of $850,000. (Geraci Decl. ¶ 24.)

(7) <u>Blow-Up Clause</u>: The parties have not identified any particular number of claims or opt-outs that would void the settlement.

(8) <u>Incentive Award</u>: David Martin, named plaintiff, requests a $10,000 incentive award for his service to the class. (Fee Mot. 22–23.)

## C.    Notice to Settlement Class and Claim Submissions

GTL produced records of its Notification Calls during the discovery process, and it further refined those records to compile a settlement class list containing the unique telephone numbers of each person that appears to be in the class, based on the records.    Approximately 1.8 million class members were identified through Defendant's records.  (Geraci Decl. ¶ 5.)  The settlement administrator processed the available names and addresses through the National Change of Address Database to update any inaccurate addresses.  (*Id.*)

Plaintiffs then subpoenaed various wireless providers (including Verizon, AT&T, T-Mobile, Cricket Wireless, US Cellular, and others) to obtain contact information for the members of the class who were identified only by cellular phone number.  As explained above, several of the providers objected, and Plaintiffs moved to compel the documents.    (ECF No. 155.)    Ultimately, the Court ordered the providers to produce the subscriber information.[2]  (ECF No. 184.)

The settlement administrator engaged in a multifaceted notice campaign:

- it delivered a copy of all relevant pleadings to the United States Attorney General, and the Attorneys General of the 50 states where class members reside (Geraci Decl. ¶¶ 2–4);

- it delivered the notice to approximately 207,000 email addresses and 1,105,000 physical mailing addresses (*Id.* ¶¶ 6–14);

- it sent approximately 207,000 reminder emails (*Id.* ¶ 15);

- it established a case website providing both a long form notice and numerous other documents regarding the case (*Id.* ¶ 17), which received 118,794 visits;

---

[2] Pursuant to Pennsylvania privacy law, AT&T directly mailed notice of the settlement to class members, as opposed to providing the address to the settlement administrator for mailing.  (*See* ECF Nos. 188; 196-3.)

- it established a toll-free telephone number, which received 22,104 calls (*Id.* ¶ 18); and

- it published notice via Facebook newsfeed, delivering over 115,000,000 impressions to Facebook users (*Id.* ¶ 16).

Class members could submit claims via the settlement website, a toll-free telephone number, or by mail. (SA 18–19.) They were limited to one claim regardless of the number of times they were called by Defendant. (*Id.*) Class members submitted 32,449 claims to the administrator that were supported by a valid claim ID, telephone number, or telephone records. (Geraci ¶ 19.) An additional 1,850 claims were found deficient. (*Id.*) The settlement administrator will send notices to the class members with deficient claims, who will then have 30 days to submit proper verification. (*Id.*)

## IV.   ANALYSIS

The Court previously found that the class merited certification, and nothing has changed since the Court conditionally certified the class. Accordingly, the Court maintains its approval.

### A.   Class Certification

Class certification is a prerequisite to preliminary approval of the settlement agreement. Class certification is appropriate only if each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met. Under Rule 23(a), the plaintiff must show that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Next, the proposed class must meet at least one of the requirements of Rule 23(b)(3): (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and/or (2) a class action is

"superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1. Rule 23(a) Requirements

The proposed class meets all four 23(a) factors. First, it is sufficiently numerous. While no "exact numerical cut-off is required" for the numerosity requirement, "numerosity is presumed where the plaintiff class contains forty or more members." *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009). The class size in this case is approximately 1.8 million members. Thus, this class easily meets the requirement.

Next, the claims of the potential class members demonstrate common questions of fact and law. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012). The issues are essentially the same for all members: they all received a Notification Call on their cellular telephones and were unable to opt-out, allegedly in violation of the TCPA. Common questions among the class include whether: (1) the calls used a "prerecorded voice," and (2) the calls complied with the FCC's opt-out requirements. At this juncture, no discernable individualized issues appear to exist which might detract from the common questions of fact and law. As such, the class meets this requirement.

The named plaintiff in this action also meets the typicality requirement.[3] Typicality in this context means that the representative claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Here, Plaintiff Martin (like all class members) contends that he received a robocall, that it was made without prior express consent, and that it was not exempt per the FCC's order. Thus, the lead plaintiff shares material common factual and legal issues with

---

[3] Despite the case name being *Alice Lee v. Global Tel*Link*, the "Consol" (lead) plaintiff in the action is David W. Martin.

the other settlement class members. Nothing has changed since preliminary approval to disturb this analysis.

Finally, the named plaintiff and his counsel satisfy the adequacy requirement for representing absent class members. This requirement is met where the named plaintiffs and their counsel do not have conflicts of interest with other class members and will vigorously prosecute the interests of the class. *Id.* Here, there is no evidence of any potential conflicts. Class counsel appear well-qualified because they have successfully litigated TCPA actions in the past. (*See* Declaration of Timothy J. Sostrin ("Sostrin Decl.") ¶¶ 17–24, ECF No. 188-3.) Furthermore, when presented with discovery issues after agreeing to the settlement, counsel continued to litigate by moving to compel production of the class members' phone records, and subsequently seeking review of the Magistrate Judge's ruling. (*See* ECF No. 184.) This supports class counsel's adequacy, and vigorous representation of the class.

As such, the proposed class and its representative satisfy the Rule 23(a) requirements.

### 2. *Rule 23(b)(3) Requirements*

Simply put, Rule 23(b)(3) requires that the class be "sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022. Questions of law or fact common to class members must predominate over any questions affecting only individual class members, and class resolution must be superior to any other available methods of adjudication. Here, questions of law or fact common to class members predominate over individualized questions because the only issues that appear to be at stake—whether the calls were prerecorded and whether the FCC exempts them from the TCPA—are common to the class. Further, the sheer number of claimants (let alone class members) demonstrates that individual actions would not be efficient, and requiring each potential class member to litigate it themselves would mean the costs of litigation for each plaintiff would dwarf any recovery. The class meets the requirements of Rule 23(b)(3).

Therefore, the Court confirms its certification for settlement purposes.

## B. Fairness of Settlement Terms

The Court previously found that the settlement was fair, adequate, and reasonable in its preliminary approval order. (Prelim. Order 10–13.)

In determining whether a proposed class action settlement is "fair, reasonable, and adequate," this Court may consider some or all of the following factors: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009). The settlement is appropriate under these factors, as discussed below.

### 1. *Strength of Plaintiffs' case and complexity of further litigation*

Defendant presented a cognizable defense by arguing that the FCC's rules regarding opt-outs prevented liability. Thus, Defendant disputes its liability, but concedes to settlement because of the inherent uncertainty in the result of continued litigation. *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) ("[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."). While the details of this case may not be terribly complex, the large number of class members, and case management issues, support a resolution through the class-wide settlement process. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). Accordingly, these elements support approving the settlement.

### 2. Risk of maintaining class action status

Individual issues unearthed during discovery can derail a class action in TCPA suits. *See Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D. Ill. 2011) (refusing to certify TCPA class where the "proposed class includes a substantial number of people who voluntarily gave their telephone numbers to the [defendant]"). On the other hand, some courts find that issues of consent are worthy of class resolution. *See Green v. Serv. Master on Location Servs. Corp.*, No. 07 C 4705, 2009 WL 1810769, at *2 (N.D. Ill. June 22, 2009) (quoting *Hinman v. M and M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 806–07 (N.D. Ill. 2008)) ("'the question of consent may rightly be understood as a common question' and the possibility that some class members may have consented is not sufficient to defeat class certification."). Accordingly, both sides had arguments for, and against, class certification, which supports a settlement.

### 3. Amount offered in settlement

The parties agreed to an $8.8 million non-reversionary settlement fund. If the Court awards the requested fees, and the number of claims stays the same, then each class member will receive $174.52. This exceeds the amount individual class members receive in many TCPA cases in the Ninth Circuit. *See, e.g.*, *Franklin v. Wells Fargo Bank, N.A.*, No. 14-cv-2349-MMA (BGS), 2016 WL 402249, at *5 (S.D. Cal. Jan. 29, 2016) (approving settlement where class members received approximately $71.16); *Estrada v. iYogi, Inc.*, No. 2:13–01989 WBS (CKD), 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members estimated to receive $40). There is also an injunctive component to the settlement, which provides prospective relief. (SA 15–16.) *Grant v. Capital Mgmt. Servs.*, No. 10–cv–2471–WQH (BGS), 2014 WL 888665, *9 (S.D. Cal. Mar. 5, 2014) (approving class settlement under the TCPA providing only injunctive relief). Therefore, this factor also favors approving the settlement.

### 4. Stage of proceedings

The parties litigated this case for two years before reaching a settlement. Plaintiffs defeated a motion to dismiss, and opposed a motion for summary judgment, and motion to exclude expert testimony. (ECF Nos. 40, 98, 111.) They engaged in discovery regarding the substance of Plaintiffs' claims and Defendant's defenses. The parties attended mediation in October 2016, which proved unsuccessful. However, they later accepted a mediator's proposal. Even after the Court preliminarily approved the settlement, Plaintiffs continued to litigate to obtain the identifying information of class members from cellular providers. (*See* ECF No. 184.) These facts all support a finding that the parties settled after being fully informed of their respective positions.

### 5. Experience of counsel

The parties are represented by worthy counsel, who are experienced in this field. (Sostrin Decl. ¶¶ 17–24.)

### 6. Presence of government participant

The settlement administrator notified the United States Attorney General and the attorneys general of each of the 50 states. (Geraci Decl. ¶¶ 2–4.) None of the notified parties have objected to the settlement, or otherwise appeared. (*Id.* ¶ 4.) This supports a finding that the government entities have no concerns regarding the settlement's adequacy. *See Garner v. State Farm Mut. Auto Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010) ("Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures."). Accordingly, this factor also supports approving the settlement.

### 7.    Reaction of class members

Of approximately 32,000 valid claims, only nineteen class members opted out of the settlement.  (Geraci Decl. ¶ 20.)  This low opt-out rate indicates a favorable reception by the class.  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming the district court's approval where 45 of 90,000 notified class members objected to the settlement, and 500 class members opted out of the settlement).  There are only two objectors, whose objections the Court addresses below.  And although only 1.8% of the potential class members submitted claims as opposed to the predicted 5%, this does not preclude final approval.  (*See* Geraci Decl. ¶ 19); *see Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) (noting that in consumer class actions a low claim rate "does not suggest unfairness"); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377–78, 1384 (S.D. Fla. 2007) (approving settlement where 118,663 out of approximately 10.3 million class members submitted claims, for a claim rate of approximately 1.2%); *see also Bayat v. Bank of the West*, C–13–2376 EMC, 2015 WL 1744342, at *6 (N.D. Cal. Apr. 15, 2015) (finding class settlement in TCPA claim to be fair, adequate, and reasonable where there was only a 1.9% claim rate for damages, and 1.1% for injunctive relief).  Accordingly, this factor weighs in favor of settlement.

On balance, these factors weigh in favor of approving the settlement.

### C.    Sufficiency of Notice

To find notice to absent class members sufficient, the Court must analyze both the type and content of the notice.

### 1.    Type of Notice

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  The Ninth Circuit has approved individual notice to class members via e-mail.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015).   It has also approved notice via a

combination of short-form and long-form settlement notices.  *Id.*; *see also Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 331 (C.D. Cal. 2016) (approving e-mail and postcard notice, each of which directed the class member to a long-form notice).

As detailed above, the settlement administrator emailed, snail-mailed, and advertised the settlement via Facebook and the settlement website.  (Geraci Decl. ¶¶ 6–18.)  It also received thousands of calls on the toll-free number created for this settlement, which confirms the notice effectively reached class members.  (*Id.*)

### 2.  Content of Notice

The Court previously analyzed and approved the notice.  (Prelim. Order 13.) Overall, the notice procedure and content are adequate.

## D.  Objectors & Petition for Alternate Cy Pres Distribution

Irene Beck and Stephen Kron object to the settlement.

### 1.  Irene Beck

Beck objects to section 12.3 of the Class Settlement Agreement.  (Beck Obj. 2, ECF No. 194.)  Section 12.3 provides that any funds not distributed to class members after the first and second distributions shall be distributed cy pres to the National Consumer Law Center, and "earmarked for working with the FCC and Congress to safeguard the protections of the TCPA."  (SA 20.)  "The cy pres doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries."  *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307–08 (9th Cir. 1990)).

Beck contends that, while the National Consumer Law Center advocates worthy causes, it does not "focus upon litigation specifically aimed at ameliorating the barriers to communication between inmates and their loved ones."  (Beck Obj. 2.) She contends she spent large amounts of money speaking to her incarcerated loved one, and she requests that the cy pres award be distributed to an organization that would fight to lower the cost of communication with prisoners.  (*See id.*)  Defendant

and other providers, she argues, charge exorbitant rates to communicate with prisoners. She suggests the Human Rights Defense Center ("HRDC") as an organization that would work to lower the rates, and further allow communication with inmates. (*Id.*)

In addition to objecting, Beck filed a "Petition for an Order Approving Distribution of Cy Pres Funds." (Pet., ECF No. 197.) Her Petition argues the same points as her Objection and provides several letters from various respected legal minds lauding the work of the HRDC. (*See id.*; Supp. Declaration of Brian Vogel ("Vogel Decl."), Ex. 11, ECF No. 199.) The Court does not dispute the admirable work of HRDC. However, Beck misses the point. She claims that "[t]he core identifiable goal of the Plaintiff Class is to be charged no more than affordable, reasonable rates for their telephone calls from prisoners after they receive automated billing calls to which they previously did not consent." (Pet. 7.) This is plain wrong.

The purpose of this class action was to vindicate the rights of class members *vis-a-vis* the TCPA; it had nothing to do with the rates—exorbitant or not—charged by Defendant. (*See* Compl.; *see also* SA 26 (§ 17.2 releasing only claims relating to automated calls made by Defendant without class members' consent, and making no mention of the rates).) The National Consumer Law Center advocates against automated calls and will further the goals of the absent class members. (*See* NCLC, *Robocalls & Telemarketing*, https://www.nclc.org/issues/robocalls-and-telemarketing.html (last visited Sept. 21, 2018).) Furthermore, the funds distributed to the National Consumer Law Center will be earmarked for use in conjunction with enforcing the TCPA. (SA 20.) The cy pres doctrine requires the Court to provide the funds to the "next best class of beneficiaries." *See Nachshin*, 663 F.3d at 1036 (quotation marks omitted). The National Consumer Law Center fits that bill.

Plaintiffs also contend that Beck lacks standing because she submitted a deficient claim form. (Mot. Final Approval 18.) The form was deficient because it did not provide "a mobile number contained in the Class List, a valid claim ID, [or]

any telephone records establishing receipt of a Notification Call." (Geraci Decl. ¶ 23.) Beck responded to this argument in a late-filed declaration attaching 2018 telephone records, bank records spanning 2015–17, and a deficient claim notice. (*See* Declaration of Irene Beck ("Beck Decl."), Exs. 1-3, ECF No. 202.) However, the court need not address Beck's standing. Even assuming Beck has standing to object, the grounds for her Objection and Petition are insufficient to warrant denial of the Motion for Final Approval.

Accordingly, the Court **OVERRULES** Beck's Objection, and **DENIES** her Petition. (ECF Nos. 194, 197.)

### 2. Stephen Kron

Kron objects to the settlement because he claims class counsel seeks too high a fee award. (Kron Obj., ECF No. 191.) Kron contends he is a class member and submitted claim number 10268118101. (Kron Obj. 1.) Plaintiffs counter that Kron is not a class member, and therefore lacks standing to object. (Mot. Final Approval 18); *see* Fed. R. Civ. P. 23(e)(5) ("Any *class member* may object….") (emphasis added). Plaintiffs argue that Kron is not on the class list, and that, while the claim ID he provided corresponds to a company on the class list, Westcoast Commercial, Kron does not claim to be associated with Westcoast Commercial. (Geraci Decl ¶ 21.) In any event, Westcoast Commercial already submitted a claim, and did not object. (*Id.*)

The Court addresses the validity of the fee award below, and therefore the merits of Kron's objections to the extent he could have standing. As discussed below, the Court **OVERRULES** Kron's Objection. (ECF No. 191.)

## V. ATTORNEYS' FEES, COSTS, INCENTIVE AWARDS, AND SETTLEMENT ADMINISTRATOR FEES

Plaintiffs seek attorneys' fees and costs, an incentive award for the named-plaintiff, and settlement administrator fees. (ECF Nos. 188, 196.)

## A.    Attorneys' Fees

Class Counsel seeks 25% of the common settlement fund ($8.8 million), which totals $2,200,000.  (Fee Mot. 8.)  "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citation omitted). "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method."  *Id.* at 942.  "[T]he lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010).

In the Ninth Circuit, contingency fee recovery is typically in the range of 20% to 33.33% of the total settlement value, with 25% considered a benchmark.  *See In re Bluetooth*, 654 F.3d at 941–42.  "Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar.  Applying this calculation method, courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."  *Id.* at 942.  Courts may also "cross-check" the percentage-of-the-fund approach under circumstances where the fees seem suspect.  *See id.* at 944.

Under the percentage method, class counsel's fee request meets the benchmark. It is further justified by the discussion above regarding the strength of Plaintiffs' case, the challenges counsel faced in negotiating this settlement, and the favorable outcome for the class.

However, the lodestar cross-check indicates a slight reduction is warranted.

The lodestar method calculates a fee award by multiplying hours worked, by hourly rate, and typically provides a multiplier that considers risk endured by class counsel. *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). Here, class counsel submits declarations that establish:

| Name | Rate | Hours | Lodestar |
|---|---|---|---|
| Patric A. Lester (Solo Practitioner) | $500.00 | 400.1 | $200,050.00 |
| Belford Smith (Paralegal) | $195.00 | 114.3 | $22,288.50 |
| Keith Keogh (Partner) | $600.00 | 169.3 | $101,580.00 |
| Tim Sostrin (Associate) | $500.00 | 764.2 | $382,100.00 |
| Matt Seckel (Paralegal) | $175.00 | 17.2 | $3,010.00 |
| | **Totals** | **1465.1** | **$709,028.50** |

(Declaration of Patric Lester ("Lester Decl.") ¶¶ 24–26, ECF No. 188-1; Sostrin Decl. ¶ 15.)

  *1. Hours*

The approximately 1,465 hours spent by class counsel reaching this settlement included: researching and drafting motions for preliminary and final approval and motion for fees, opposing Defendant's motion to dismiss, summary judgment, and motion to exclude expert, negotiating the settlement and participating in, and preparing for, mediation, and discussing case strategy with co-counsel. (*See* Lester Decl. ¶ 10; Sostrin Decl. ¶¶ 11–15.)

"[I]t is well established that '[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting. . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records.'" *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) (quoting

*Covillo v. Specialtys Cafe*, No. C–11–00594 DMR, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014)). Here, class counsel's declarations reasonably set forth the details of how they spent their time, and the tasks all seem necessary. While counsel surely could have included a bit more detail in their declarations, the docket in this action demonstrates that class counsel engaged in significant motion practice, substantiating the hours expended over a two-year period. Accordingly, the Court cannot find that the number of hours expended are unreasonable, especially when being used as a cross-check for the percentage method of fee calculation.

### 2. *Rate & Lodestar Multiplier*

In evaluating rates, courts consider the reasonable rates for the specific geographic area and type of practice. *See Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986). Here, class counsel details their extensive experience in litigating consumer class actions in support of their hourly rates. (Lester Decl. ¶¶ 21–23; Sostrin Decl. ¶¶ 17–23.) Lester also provides citations to other cases where courts have approved his hourly rates. *See, e.g.*, *In re Portfolio Recovery Assoc., LLC, Tel. Consumer Prot. Act Litig.*, No. 11-MD-2295 JAH (BGS) (S.D. Cal. Mar. 29, 2018) ECF Nos. 655–56 (approving $500 hourly rate for Lester and $195 hourly rate for Belford); *see also Chan v. Sutter Health Sacramento Sierra Region*, LA CV 15-2004 JAK (AGRx), 2017 WL 819903, at *6 (Feb. 14, 2017) (approving rates ranging between $425 and $595 per hour in TCPA class action). Thus, these rates appear reasonable.

Courts typically award a multiplier in a lodestar calculation that considers the risk contingency fee attorneys endure. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("[C]ourts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases."). Here, as is, the lodestar multiplier is approximately 3.1 ($709,028.50 x 3.1 = $2,197,988.35). The Ninth Circuit routinely upholds higher lodestar multipliers. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (upholding multiplier of 3.65 and noting that

range between 1 and 4 is typically appropriate). Plaintiffs argue this multiplier is appropriate because class counsel are both small firms and litigated this contingency fee case for approximately two years without any guarantee of payment.

The court finds this lodestar multiplier a bit high, although not entirely unreasonable given the litigation history and motion practice necessary prior to settlement. Accordingly, the Court reduces the lodestar multiplier to 3.0, and approves a fee award of $2,127,085.00.

### 3. Kron's Objection

Kron argues that the 25% contingency fee should be calculated from the net recovery of the class, instead of the gross settlement fund, which includes money earmarked for administrative fees and costs. (Kron Obj. 3.)

The Ninth Circuit has expressly held that calculating the fee as set forth above is permissible: "The district court did not err in calculating the attorneys' fees award by calculating it as a percentage of the total settlement fund, including notice and administrative costs, and litigation expenses." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015); *see also Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000) (rejecting objector's argument that a fee award should be based on "net recovery," which does not include "expert fees, litigation costs, and other expenses"). Furthermore, the percentage award is further confirmed by the lodestar analysis.

Accordingly, in addition to Kron's lack of standing, the Court **OVERRULES** his objection for this reason too.

**B. Litigation Expenses & Settlement Administrator Fees**

Class counsel seeks $75,980.30[4] in litigation expenses, and an award of approximately $850,000 to the settlement administrator. (*See* Lester Decl. ¶ 27; Sostrin Decl. ¶ 16; Fee Mot. 22; Geraci Decl. ¶ 24.)

*1. Litigation Expenses*

Litigation expenses are generally recoverable as part of a class action settlement. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177–78 (S.D. Cal. 2007) (finding that costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax costs, computerized legal research fees, and mediation expenses are relevant and necessary expenses in class action litigation). Class counsel persuasively argued that their litigation expenses were reasonably incurred and necessary to the litigation. The litigation fees appear reasonable in relation to the settlement amount, and included mediation fees, deposition costs, travel expenses, expert fees, and invoices relating to distribution of the class notice by AT&T. (Sostrin Decl. ¶ 16; Supp. Expl..) Class counsel does not seek reimbursement for every expense incurred. (Supp. Expl. 1 n.1; *id.* at 2.) Most of the litigation fees (approximately $53,765.00) relate to invoices for fees paid to Plaintiffs' expert, Jeff Hansen. (*See* Supp. Expl. 2; Supp. Declaration of Timothy J. Sostrin ("Supp. Sostrin Decl."), Ex. A, ECF Nos. 204-1–204-2.). Therefore, the Court finds litigation expenses in the amount of $75,980.30 reasonable.

*2. Settlement Administrator's Fee*

The settlement administrator's fee of approximately $850,000 on a $8.8 million settlement also appears reasonable. It is also less than originally predicted, given the lower claim rate. The settlement administrator was required to oversee notice to more

---

[4] Class Counsel initially sought $76,825.97 in litigation expenses. (Fee Mot. 22.) However, at the Court's request, Class Counsel reviewed and corrected the submitted expenses, and accordingly adjusted the requested amount downward to $75,980.30. (Supp. Explanation of Litig. Costs ("Supp. Expl.") 1 n.1, ECF No. 204.)

than one million class members, maintain a database of responses with personal consumer information, set up a website, purchase Facebook advertising, and field calls from potential class members. Therefore, the amount of the settlement fund set aside for the settlement administrator is reasonable.

## C.    Incentive Award

Class Counsel requests an incentive award of $10,000 for the lead plaintiff. (Fee Mot. 22–23.)    Martin, as the lead plaintiff, sat for deposition, regularly communicated with his attorneys, submitted a declaration in support of the motion for class certification, and appeared at a hearing on Defendant's Motion to Change Venue. (Declaration of David Martin ("Martin Decl.") ¶ 3.)    "Generally, in the Ninth Circuit, a $5,000 incentive award is presumed reasonable." *Bravo v. Gale Triangle, Inc.*, No. CV 16–03347 BRO (GJSx), 2017 WL 708766, at *19 (C.D. Cal. Feb. 16, 2017) (citing *Harris v. Vector Mktg. Corp.*, No. C–08–5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012)).    Martin provides no explanation that would substantiate a claim for twice the presumed award.    Accordingly, the Court **REDUCES the incentive award to $6,250**, which is justified by Martin's appearance at deposition, declarations, and appearance at a hearing.

## VI.    CONCLUSION

For the foregoing reasons, the Court **OVERRULES** the objections of Beck (ECF No. 194) and Kron (ECF No. 191); **GRANTS** the Motion for Final Approval of Class Settlement (ECF No. 196); **GRANTS, IN PART** the Motion for Attorneys' Fees and Costs (ECF No. 188); and **DENIES** the Petition for Disbursement of Funds (ECF No. 197).

**IT IS SO ORDERED.**

September 24, 2018

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**